Gustavo **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas.

No. PD–1013–06.

Court of Criminal Appeals of Texas.

May 9, 2007.

Rehearing Denied Aug. 22, 2007.

Richard A. Henderson, Fort Worth, for Appellant.

Michael R. Casillas, Asst. Criminal District Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Appellant was charged with Possession of Cocaine with Intent to Deliver. He filed a pre-trial motion to suppress claiming that the affidavit supporting the search warrant did not contain sufficient facts to establish probable cause to search his garage. The trial judge denied the motion to suppress, but the court of appeals reversed appellant's conviction and held that the trial court abused its discretion in not

granting appellant's motion to suppress.[1] We hold that the affidavit did support the magistrate's finding of probable cause.[2]

## I.

The evidence at trial showed that, in November of 2003, an informant notified Fort Worth police officers that appellant's uncle, Eduardo Cantu, was selling and transporting large quantities of cocaine in Fort Worth. Numerous narcotics officers began surveillance of Cantu and followed his car to a house at 4316 Goddard Street in Fort Worth. This house belonged to appellant. The officers watched Cantu drive into the driveway and pull around to the rear of the house next to a detached garage. They saw Cantu get out of his car and walk into the garage. A short while later, Cantu came out of the garage. He was carrying a package in his right hand. Looking around nervously, Cantu threw that package into the backseat of his car and drove away.

One of the undercover surveillance officers followed Cantu for a few blocks in an unmarked car. When he saw Cantu fail to use a turn signal, he contacted a nearby uniformed patrol officer and asked that officer to stop Cantu for the traffic viola-tion. During that traffic stop, Cantu gave his written consent to search his car. The patrol officer found a brown paper sack containing three brick-like objects that looked like packaged cocaine on the floor board of the left backseat. Cantu then told both the patrol and undercover offi-cers that the three kilos of cocaine in his car came from the garage on Goddard Street and that there was more cocaine at that garage. After arresting Cantu, the undercover officer radioed the other sur-veillance officers, who were still watching the Goddard Street house and garage, that Cantu had told him that there were at least ten more kilos of cocaine at that location.[3]

One surveillance officer then left to ob-tain a search warrant. The remaining offi-cers could hear "tool noises, metal on met-al banging" coming from the garage. The officers therefore decided to secure the scene to prevent any destruction of evi-dence. They opened the garage door and saw appellant and two other males taking apart a tool box on the bed of a pickup truck. The officers had the three males sit in one area of the garage until they received confirmation that the magistrate

1. *Rodriguez v. State*, No. 02–05–21–CR, 2006 Tex.App. LEXIS 3373, *1, 2006 WL 1102585, at *1 (Tex.App.-Fort Worth April 27, 2006) (not designated for publication).

2. The State's two grounds for review read as follows:

    1. The panel below erred by interpreting the warrant affidavit in a hyper-technical man-ner which failed to accord proper deference to the magistrate's right to make reasonable inferences from the facts contained therein and did so despite the State's express argu-ments that such affidavits were to be con-strued in a common-sense manner with cognizance of the magistrate's right to make reasonable inferences from the facts contained therein as to whether contraband or other evidence of a crime would proba-bly be recovered as the result of a search of the specified premises.

    2. The panel below erred by mistakenly ap-plying the legal principles for assessing probable cause in such a manner as to convert the focus of the assessment of prob-able cause to a determination as to whether the warrant affidavit provided an actual showing that contraband would be found as a result of a search of the specified premis-es, instead of an assessment of whether the magistrate had been provided a substantial basis for concluding that contraband or other evidence of a crime would probably be recovered as the result of a search of the specified premises.

3. As discussed below, this information was left out of the affidavit.

had issued a search warrant. They then searched the garage, found forty-three kilos of cocaine, and arrested appellant.

Appellant was indicted for possession of more than 400 grams of cocaine with the intent to distribute it. After the trial court denied appellant's motion to suppress, a jury convicted him, and the trial judge sentenced appellant to forty-seven years' imprisonment.

The Fort Worth Court of Appeals reversed the trial court's ruling on the motion to suppress, concluding that the affiant's "mere belief that the residence on Goddard Street was being used to store large amounts of cocaine is not enough to support the issuance of the search warrant." [4] It also concluded that the facts set out in the affidavit,[5] while they "may lead to a suspicion that contraband might

4. *Rodriguez v. State,* No. 02–05–21–CR, 2006 Tex.App. LEXIS 3373 at *14, 2006 WL 1102585, at *5 .

5. The affidavit read as follows:

1.  Your affiant is employed as a Fort Worth Police Officer assigned to the Special Operations Division, MNICU Section and has been employed as a police officer for over five years. Your affiant has received numerous hours of training in the field of narcotic and dangerous drug enforcement.
2.  That in November of 2003, your affiant received information that a Hispanic male by the name of Eduardo Cantu was selling and transporting large amount[s] of cocaine in the City of Fort Worth.
3.  That your affiant identified the suspect as Eduardo Cantu, a Hispanic male, date of birth 05/02/69 through Tarrant County Arrest Records and Photograph (CID# 0286563).
4.  That on this date, November 24, 2003, your affiant and assisting Fort Worth Police Narcotic Officers began surveillance of the suspect. Officers followed the suspect to a residence at 4316 Goddard Street in Fort Worth, Tarrant County, Texas. This residence has two mail boxes in front of the residence. One mail box displaying the numbers "4315" and the other displaying "4318." That through Tarrant County Tax records, this shows to be one residence.
5.  That on this date, officers observed the suspect driving a 2000 Ford Taurus bearing Texas LP# G89CWH arrive at this location and pull into the driveway and continue into the backyard of this residence. Officers then observed the suspect enter a small shed in the backyard of this residence.
6.  After approximately 5 minutes, your affiant was advised by surveillance officers that the suspect exited the metal shed with an object in his right hand and immediately

threw it into the backseat, as he looked around very nervous.
7.  Surveillance officers then followed the suspect away from the residence. Upon the suspect approaching the intersection at Goddard and N. Beach, the suspect failed to utilize his right turn signal. Fort Worth Patrol Officer R. Dellossantos then initiated a traffic stop due to this traffic offense at 2000 N. Beach Street in Fort Worth, Tarrant County, Texas.
8.  Officer Dellossantos then made contact with the suspect and positively identified the suspect as Eduardo Cantu. Officer Dellossantos then received written consent from the suspect to search his vehicle. Upon searching the back left portion of the backseat, Officer Dellossantos located a[n] Exhibit # 1 (brown paper sack, containing three brick like objects, believed to contain cocaine) on the floor board of the vehicle.
9.  The suspect was then placed under arrest for Possession of C/S With Intent to Deliver over 400 grams.
10.  Surveillance officers then returned to the residence of 4316 Goddard and approached the residence and secured it to prevent any destruction of evidence after officers heard loud banging in the detached garage. Officers then opened the bay door and observed suspects Gustavo Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth 02/16/79 all dis[as]sembling a tool box on the 2000 White Ford Pickup bearing Texas LP# 7VSH10.
11.  Your affiant has reason to believe and does believe that the residence at 4316 Goddard and the vehicles at this location are being used to store large amounts of cocaine.

be located at the residence," did not suffice to give the magistrate "a substantial basis for concluding that a search would uncover evidence of wrongdoing."[6]

## II.

The Fourth Amendment commands that no warrants, either for searches or for arrests, shall issue except upon probable cause,[7] and it reflects our constitutional preference for the warrant process in which police officers present their facts to a neutral magistrate to decide if there is probable cause to issue that warrant. As Justice Jackson famously stated,

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[8]

In *Aguilar v. Texas*,[9] the Supreme Court stated that "[a]n evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants ... are to be preferred over the hurried action of officers ... who may happen to make arrests.'"[10] Indeed, in *United States v. Ventresca*,[11] the Court declared that "in a doubtful or marginal case [of probable cause] a search under warrant may be sustained where one without one would fail."[12]

The Supreme Court has repeatedly reminded reviewing courts that they should "not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."[13] Thus, even in close cases we give great deference to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by

---

6. *Rodriguez,* 2006 Tex.App. LEXIS 3373 at *14–15, 2006 WL 1102585, at *5 .

7. *Henry v. United States,* 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

8. *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

9. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

10. *Id.* at 110–11, 84 S.Ct. 1509 (quoting *United States v. Lefkowitz,* 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877 (1932)).

11. 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

12. *Id.* at 106, 85 S.Ct. 741; *see generally* 2 WAYNE R. LAFAVE, SEARCH & SEIZURE § 4.1(a) at

441–46 (4th ed.2004) (discussing the jurisprudential benefits of the warrant process).

13. *Id.* at 109, 85 S.Ct. 741; *see also United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."); *United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993) ("When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited." Although reviewing court is not a rubber stamp, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' ") (citation omitted).

invoking some exception to the warrant requirement.[14]

The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location.[15] The definition of the term "probable cause" is, unfortunately, frequently beauty in the eye of the beholder. It is easier to explain what "probable cause" is not, rather than what it is. For example, in *Bower v. State*,[16] this Court stated that a "magistrate is not bound by such finely tuned standards as proof beyond a reasonable doubt or by a preponderance of the evidence; rather his sole concern should be probability." [17] The test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a "substantial basis for the issuance of the warrant[,]" [18] thus, "[t]he magistrate's sole concern should be probability." [19] Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location.[20] It is a "flexible and nondemanding" standard.[21]

---

14. *See Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search."); *see also Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("The Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant,' and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.") (citation omitted).

15. U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); TEX. CONST. art. I, § 9 ("The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.").

16. 769 S.W.2d 887 (Tex.Crim.App.1989).

17. *Bower*, 769 S.W.2d at 902 (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). We have defined substantial basis as not a "standard[ ] such as proof beyond a reasonable doubt or by a preponderance of the evidence." *Johnson v. State*, 803 S.W.2d 272, 288 (Tex.Crim.App. 1990).

18. *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *see also Ramos v. State*, 934 S.W.2d 358, 363 (Tex.Crim.App.1996) (stating that "allegations are sufficient if they would 'justify a conclusion that the object of the search is probably on the premises' ").

19. *Johnson*, 803 S.W.2d at 288. Probable cause "exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Cassias v. State*, 719 S.W.2d 585, 587–88 (Tex.Crim.App.1986); *Ventresca*, 380 U.S. at 107, 85 S.Ct. 741 ("While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that the term 'probable cause'... means less than evidence which would justify condemnation") (some internal quotations omitted).

20. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

21. 40 GEORGE W. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 5.03 at 292 (2d ed. 2001) ("Almost

■ Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but that probability cannot be based on mere conclusory statements of an affiant's belief.[22] An affiant must present an affidavit that allows the magistrate to independently determine probable cause and the magistrate's " 'action[s] cannot be a mere ratification of the bare conclusions of others.' "[23]

■ On the other hand, when reviewing a magistrate's decision to issue a warrant, trial and appellate courts apply a highly deferential standard in keeping with the constitutional preference for a warrant.[24] Thus, when an appellate court reviews an issuing magistrate's determination, that court should interpret the affida-vit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences.[25] When in doubt, we defer to all reasonable inferences that the magistrate could have made.

■ Just last term, in *Davis v. State*,[26] this Court addressed the level of specificity required in an affidavit for a magistrate to find probable cause to issue a search warrant. In *Davis*, the defendant was arrested for the manufacture of methamphetamine seized under a search warrant.[27] The magistrate had issued the warrant based on the affiant's statement that a patrol officer drove past the defendant's residence and "could smell a strong chemical odor he has associated with the

---

certainly, for example, fair probability does not require information that would persuade a reasonable person that the matter is more likely than not."). For example, if two people are seen holding smoking guns and there is a dead body between them with a single bullet through the heart, Officer Obie "could have probable cause to believe that both of the two suspects are guilty and hence subject to arrest." *Id. See generally Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (finding probable cause to arrest all three men in a car in which baggies of cocaine were found beneath the backseat armrest because the baggies were accessible to all three men and could have been possessed by one or two or three acting as parties); *see generally* 2 WAYNE R. LaFAVE, SEARCH & SEIZURE § 3.2(e) at 66–91 (4th ed.2004) (discussing the degree of probability necessary to establish probable cause under various hypotheticals and arguing that, in some situations, it should be more-likely-then-not while in others a less then 50% probability may suffice).

22. *Johnson v. State*, 803 S.W.2d at 288.

23. *Id.* (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317).

24. *Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (noting "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a *de novo* review. A magis-trate's 'determination of probable cause should be paid great deference by reviewing courts.' "); *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex.Crim.App.2004).

25. *See Gates*, 462 U.S. at 240, 103 S.Ct. 2317; *see also Ventresca*, 380 U.S. at 108, 85 S.Ct. 741 ("If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."); *see also Cassias v. State*, 719 S.W.2d at 588 ("A search warrant affidavit must be read in a commonsense and realistic manner, and reasonable inferences may be drawn from the facts and circumstances contained within its four corners.").

26. 202 S.W.3d 149 (Tex.Crim.App.2006).

27. *Id.* at 150–52.

manufacture of methamphetamine emitting from the residence."[28] The court of appeals held that the magistrate did not have a sufficient basis for issuing a search warrant because the affiant did not specifically describe the officer's "expertise or experience in recognizing the odor associated with the manufacture of methamphetamine."[29] This Court rejected that logic. We stated that it was a reasonable inference that a police officer who smells something that he " 'associat[es]' with the manufacture of methamphetamine" has had prior experience with methamphetamine.[30] Otherwise he would not recognize the smell of methamphetamine. We concluded that when this statement and its supporting inferences were combined with the other facts in the affidavit (including an informant's tip), the totality of the information provided enough support for the magistrate's decision to issue a warrant.[31] The inquiry for reviewing courts, including the trial court, is whether there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit.

### III.

■ With those general principles in mind, we turn now to the affidavit in this case. This affidavit stated that an experienced narcotics officer received information that Cantu was selling and transporting large amounts of cocaine in Fort Worth. Based on this information, a team of officers began surveillance of Cantu and followed him to 4316 Goddard Street. They saw him "arrive at this location and pull into the driveway and park close to a metal shed" or garage. He went into the garage. Shortly thereafter, they saw him come out of the garage with a package in his right hand. As he looked around nervously, Cantu threw that package into the back seat. It is a fair inference from these facts that Cantu obtained that package from the garage.

The affidavit also states that after Cantu was stopped for a traffic violation and consented to a search of his car, the patrol officer found a brown paper sack, containing three brick-like objects both he and the undercover officer believed to be cocaine on the backseat floor board of the vehicle—just exactly where the surveillance officers had seen Cantu toss the "object" that he had taken out of the garage.

It is also a fair inference from these facts that the object Cantu took from the garage and tossed into the back seat area was the very same object that the officers found in the back seat area. One object tossed into the car, one object taken out of the car. That object looked like bricks of cocaine.

In this case, the court of appeals focused on various facts that the affidavit did not contain, rather than the facts that it did contain. It also failed to defer to the reasonable inferences that the magistrate

**28.** *Id.*

**29.** *Id.* at 153.

**30.** *Id.* at 157. We wrote, "It is not unreasonable to infer that when a person identifies a smell by association, he has encountered that odor-causing agent before. This is especially so when that person may reasonably be expected to have had some experience with that kind of odor." *Id.*

**31.** *Id.*

could draw from those facts. Most notably, the court of appeals stated that

> the affiant has not provided facts that would lead a detached and neutral magistrate to determine that the brown paper sack containing the cocaine was the same "object" that Cantu obtained from the detached garage and placed in the backseat of his car.[32]

The issue in this case is whether the magistrate could infer that the package of cocaine found in the backseat of Cantu's car was the very same package that Cantu carried out of the garage and put into the backseat. This is a reasonable inference, especially since there was no suggestion, either in the affidavit itself or at the motion to suppress hearing or at trial, that there were any other packages in the backseat of Cantu's car. It is also an entirely reasonable inference that the package did, in fact, contain "bricks" of cocaine, that it came from the Goddard Street garage, and that there was a fair probability that more cocaine might still be in that same garage. Although it is possible that Cantu had taken all of the cocaine with him when he left, it is at least equally reasonable to conclude that where there was smoke (the original three-kilo package of cocaine) there was fire (a larger cache of

cocaine). And where there was loud banging within the garage from which the original package of cocaine was taken, there might well be activities in progress to prepare those additional amounts of cocaine for transport. Neither the officers nor the magistrate could be positive of the existence of additional contraband in the garage, but it is certainly "a fair probability" that there was more cocaine stored where the first package came from.

We agree with what the court of appeals is implying: the more information in an affidavit the better. In this case, the addition of a single sentence, "Cantu told the arresting officers that there was at least ten kilos more of cocaine in the Goddard Street garage,"[33] would have made the reviewing courts' task much easier. But that fact was not crucial to establish probable cause. In this case, the affiant was sent from the Goddard Street location to draft an affidavit, find a magistrate, present the affidavit and warrant to that magistrate, and wait for the magistrate's review and issuance of the warrant, all while the other officers were at the Goddard Street garage detaining three men and awaiting further instructions. It is not surprising that, in his haste, the affiant did

---

**32.** *Rodriguez,* 2006 Tex.App. LEXIS 3373 at *14, 2006 WL 1102585, at *5. The court of appeals also noted that the affidavit did not contain facts describing (1) how or from whom the affiant received information that Cantu was a drug trafficker; (2) the neighborhood or area where Cantu was selling cocaine; (3) suspicious activity around the house; (4) whether the garage was in a high-crime area or whether there was frequent drug activity there; or (5) whether the officers securing the garage saw anything inside that would give rise to an inference that large amounts of cocaine were being stored within it. *Id.* 2006 Tex.App. LEXIS 3373 at *14–15, 2006 WL 1102585, at *5-6.

**33.** Although it appears from the trial testimony that the affiant had been told, before he

left to obtain the warrant, that Cantu said that there were ten more kilos of cocaine in the garage, the affiant, in his haste to obtain the warrant, may have simply forgotten to include this information in his affidavit. *See Ventresca,* 380 U.S. at 108, 85 S.Ct. 741 (noting that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."). Nonetheless, this fact was omitted and thus cannot be considered in deciding whether the magistrate properly concluded that there was a "fair probability" that additional cocaine would be found in the garage.

not compose a polished document that "dotted every i and crossed every t." [34]

The proper analysis of the sufficiency of a search-warrant affidavit is not whether as much information that could have been put into an affidavit was actually in the affidavit. As reviewing courts, we are obliged to defer to the magistrate and uphold his determination based upon all reasonable and commonsense inferences and conclusions that the affidavit facts support.

This case turns on two simple and reasonable inferences: First, the magistrate could infer that the package of cocaine found in the back seat of Cantu's car was the exact same package that the police saw Cantu take from the garage and throw into the back seat. Second, "[i]t does not distort common sense or read additional facts into the affidavit to infer from this information" [35] that there were more drugs located at the Goddard Street garage. Although it is possible that there were really two different packages—one containing cocaine that had been in Cantu's car all along and another, innocuous package that Cantu carried with him out of appellant's garage—that scenario is based entirely upon speculation as no second package was mentioned in the affidavit.[36] And, although it is entirely possible that Cantu took all of the cocaine stored at the Goddard Street garage with him when he left, it is at least as likely that the three kilo package was just a small part of the whole cache.

■ We hold that these facts and inferences suffice to establish probable cause. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a set of neat legal rules." [37] We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion. It is not necessary to delve into all of the facts that were omitted by the affiant, facts that could have been included in the affidavit, or contrary inferences that could have been made by the magistrate. The only issue is whether the facts that actually were in the affidavit, combined with all reasonable inferences that might flow from those facts, are sufficient to establish a "fair probability" that more cocaine would be found at the Goddard Street garage. We hold that the facts in this case are sufficient.

Therefore, we reverse the judgment of the court of appeals and remand this case to that court to address appellant's remaining claims.

MEYERS, J., filed a dissenting opinion in which WOMACK, J., joined

MEYERS, J., dissenting in which WOMACK, J., joined.

Did officers have a substantial basis for concluding that a search of Appellant's house would uncover evidence of a crime? Probably. Especially since Appellant's uncle, Cantu, told the officer who arrested him that Appellant's house contained at least ten kilos of cocaine. But the officer who went to get the warrant left this piece of information out of the affidavit. The omission didn't affect the State at that

---

**34.** *See Gates*, 462 U.S. at 235–36, 103 S.Ct. 2317 (quoting *Ventresca* and relying, in part, upon "the informal, often hurried context" in which police officers must draft their affidavits, to reject the legalistic "two-pronged" *Spinelli* test for search warrant affidavits based upon a confidential informant's tip).

**35.** *Davis*, 202 S.W.3d at 156.

**36.** And no such package was mentioned by any witness at the motion to suppress hearing or at trial.

**37.** *Gates*, 462 U.S. at 232, 103 S.Ct. 2317.

point since the magistrate issued the warrant based on the limited information that was in the affidavit. Was that error? Maybe. While it's true that affidavits for search warrants are "drafted by nonlawyers in the midst and haste of a criminal investigation," as the majority quotes from *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), this does not excuse the affiant from the requirement that the facts must show that there is probable cause to search. This is the point that the court of appeals makes.

There are other facts that the affiant should have included in the affidavit. If he had included those facts, there would not be an issue, and we would not all be wasting our time dealing with a fact-specific case that adds nothing to our jurisprudence. The court of appeals wanted to send a message to the officers: get it right, don't omit crucial facts from the affidavit. That message should have been sent by the magistrate. But, obviously, the magistrate did not know that information was omitted and did not think there was a mistake. Despite the limited information provided in the affidavit, the magistrate found probable cause and issued the warrant.

The court of appeals may have failed to defer to the magistrate's finding of probable cause and may have considered that crucial facts were omitted from the affidavit. And, the court of appeals came to a different conclusion than the majority came to. However, there is no indication that the court of appeals applied an improper standard in judging the adequacy of the warrant affidavit. Because this is a fact-specific unpublished opinion, I disagree with the decision to remand this case. Instead, we should hold that it was improvidently granted.

Under Texas Rule of Appellate Procedure 66.3, the reasons for granting review in a case include:

(a) whether a court of appeals' decision conflicts with another court of appeals' decision on the same issue;

(b) whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals;

(c) whether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States;

(d) whether a court of appeals has declared a statute, rule, regulation, or ordinance unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance;

(e) whether the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision; and

(f) whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

I don't think this case falls into any of those categories. This is a close case that reasonable people could disagree on. The court of appeals disagreed with the magistrate and the trial court, and the majority disagrees with the court of appeals. But it is not the job of this Court to throw in our two-cents worth about whether the facts that were included in the warrant affidavit were sufficient to show probable cause. I respectfully dissent.