ACCEPTED
01-14-00107-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/13/2015 9:19:53 AM
CHRISTOPHER PRINE
CLERK

No. 01-14-00107-CR

| | | |
|---|---|---|
| FREDERICK MANUEL | ) | IN THE COURT OF APPEALS |
| V. | ) | FOR THE FIRST DISTRICT |
| STATE OF TEXAS | ) | OF TEXAS |

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/13/2015 9:19:53 AM
CHRISTOPHER A. PRINE
Clerk

## APPELLANT'S MOTION FOR REHEARING

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW, Frederick Manuel, Appellant, by and through counsel, Ken Mahaffey, and respectfully moves for rehearing. In support thereof, Appellant would show the Court the following:

1. **Opinion Issued Affirming Conviction**. This Court issued an opinion affirming the Appellant's judgment of conviction on November 5, 2015.

2. **Motion Timely**. Under Rule 49.1, Tex. R. App. Proc. (2015), a motion for rehearing is timely if filed within fifteen (15) days of the date the Court of Appeals issues its opinion. This motion was electronically filed with the Clerk of the Court on or before that date. The motion is therefore timely filed. Rule 9.2 (b), Tex. R. App. Proc. (2015).

3. **Overview.** This is a search warrant case where the affidavit focused suspicion on Appellant for commission of a convenience store robbery three months prior to issuing the warrant. This Court held the affidavit was sufficient because a

Page 1

police officer could reasonably conclude that people typically keep clothing in their homes and therefore the items would be at that particular location even months after the offense. The Court's opinion may be found at the following link:

http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=f8f740e5-56b2-44e4-bc7d-ba3391f9ba0d&coa=coa01&DT=Opinion&MediaID=db147244-2e7b-4f70-a4be-b5256baea72d

## REASONS FOR REHEARING

**Point for Rehearing Number One:**

> The Court's opinion improperly broadens what is considered probable cause by holding suspicion a person committed a crime wearing certain clothing automatically constitutes probable cause to search that person's residence.

## ARGUMENT AND AUTHORITIES

"Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (3d ed.1996). While the Court reviewed a number of aspects concerning the warrant, the principal hold is that if investigators can identify clothing worn by a suspect during an offense, that will support a search warrant for his residence. This is a sweeping expansion of probable cause determinations. The Court cites some cases for this proposition, however, none of these cases support this conclusion.

First, the Court states that ". . . common experience tells us that there is a 'fair probability' that clothing worn 'a lot' over a period of years will be kept at a person's residence," *citing Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). Slip Op. p. 11. However, *Rodriguez, supra*, does not say this. In that case, the resident specifically told the officers there were drugs in the residence. *Id*. at 57. It was this admission, not the belief that drug dealers keep drugs in their homes, that supported the warrant.

The other cases cited for this proposition also relied upon much more than the fact that a person is presumed to keep clothing in his residence long after the offense. In *Cuevas v. State*, 13-11-00111-CR (Tex. App. - Corpus Christi 2012, no pet.), broken car glass was found near shooting a victim. *Id.* at 10. Suspicion focused on the defendant and that same day, the defendant's car was located at his residence with a broken window and bullet hole. *Id.* at 10 - 11. This showed both a close causal and timely connection between the gun sought and the location to be searched. *Id*. In Appellant's case, the only connection was that appellant may have owned some clothing and lived at the home.

In *Arrick* v. *State*, 107 S.W.3d 710 (Tex. App. - Austin 2003, pet. ref'd), the defendant bragged to numerous people about the killing providing details concerning his transport of the body and describing a particular gun souvenir he had made to

commemorate the event. *Id.* at 716. The affidavit established a probability that the suspect would have gotten blood on his clothing and on the carpet of his home during the offense. *Id.* at 717. It was also reasonable to infer the suspect would keep the souvenir since he obviously expended great effort to create it and displayed it to others. *Id.* at 717.

In the instant case, neither the nature of the shooting nor anything in the affidavit suggests appellant would have been spattered with blood that would still be present months later. SX 81. Nor, does the affidavit assert he created or displayed a distinctive object that he showed to others while admitting the offense. SX 81. The affiant merely says he knows that murder suspects might have bloody clothing in their residences, ". . . if it has been discarded there." SX 81 p. 5. *Arrick*, *supra*, is simply not authority for the proposition that it is common knowledge that murderers habitually keep clothing of evidentiary value in their homes.

The major case the Court seems to rely upon is a federal case from the 8th Circuit. *Iverson v. North Dakota*, 480 F.2d 414 (8th Cir.), *cert. denied*, 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973). In that case, the suspect was interviewed shortly after the offense. *Id.* at 417. He admitted knowing the murder victims and having been in the victims' apartment forty-eight hours before the bodies were discovered. *Id.* at 417. During the interview, investigators saw numerous scratches

on the suspect's hands, arms and neck. *Id*. As a result, probable cause existed for a search of the defendant's home for recently bloodstained clothes. *Id*. at 417 - 418.

The observation that an officer could draw on ". . . "factual and practical considerations of everyday life . . ," *Iverson*, *supra* at 418, did not deal with keeping items such as clothing in one's residence. Instead, what the *Iverson* court actually said was very different from this Court's application of the quote. Specifically, the *Iverson* opinion states as follows:

> ". . . [i]t is reasonable to assume that in a violent crime such as murder there would be blood present, and that female victims would fight with the weapons available to them-their hands and fingernails. Accordingly, it would be reasonable to assume that their assailant would bear scratch marks."

*Iverson*, *supra* at 418. This case simply does not say that suspicion of a crime committed elsewhere supports a general search warrant for the suspect's home because it is a known fact that criminals keep evidence in their homes. It timely and specifically focused suspicion on the place to be searched because the defendant would have returned home there soon after the offense with blood on his person.

The case at bar is decidedly different from *Iverson, supra*. Here, the affidavit made no prior connection with the location of the robbery beyond the fact that Appellant may have driven by ten minutes before the offense. SX 81, p. 6. Nor did the affidavit contain any allegation that appellant came into contact with any blood

or that it would be reasonable to conclude that any bloody clothing would still be present months later. Beyond the officer's belief, no information placed any item in the residence to be searched at the time the warrant issued.

The Court's distinction between drugs and firearms on the one hand and clothing on the other is also misplaced. Slip Op. pp. 11, 12. Essentially, the Court says drugs and guns are different than clothing because these types of items can be stored or used in other locations. *Id*. Like drugs that can be used or sold other locations, clothing can be worn, stored, laundered, or discarded in an equally likely number of places. There is also no significant difference between firearms kept by an individual and their own clothing as guns may be carried to other locations as well. The Court should reconsider the cases it distinguished based on this perceived difference in character between the items asserted to be at the location to be searched.

**Point for Rehearing Number Two:**

The Court's reliance on information received within twenty-four hours before the warrant was issued misreads the affidavit.

### ARGUMENT AND AUTHORITIES

The Court draws a conclusion that the affiant obtained key information within twenty-four hours before the warrant was issued. Slip Op. p. 20. Specifically, the Court states as follows: "The officer obtained a search warrant within 24-hours of

receiving the last piece of evidence (that Manuel drove a car identical to the one in the security video) linking Manuel to the shooting and verifying that Manuel still lived at that residence." Slip Op. p. 20. This misreads the affidavit.

The affidavit shows that investigators knew about the car since February 1, 2011. *See* SX 81 p. 3 (suspect "drove an old white 'cop car' type of vehicle"). Investigators also linked that car to appellant by color, make and license plate number. *See* SX 81, p. 4)("a white 1989 Chevy four door, bearing Texas License Plate 782FWR"). They also confirmed the information about Appellant's residence. SX 81 p. 3.

Indeed, the affiant actually states he viewed the video on January 20, 2011. SX 81, pp. 2 - 3. The only reference to information received in twenty-four hours is the statement that after interviewing a witness who identified a jacket, and that, "armed with this information" the officer viewed the video again. SX 81, p. 4. Significantly, the witness did not mention a car or any sort of vehicle. SX 81, p. 4. As a result, this was not new information; investigators had this for months.

Moreover, the Court does not explain why showing appellant may have driven by the store showed that bloody clothing would be found in his residence three months later. It only focuses suspicion on Appellant personally. Even if the information concerning the car was discovered within twenty-four hours of the

warrant, it still does not make it any more probable that the items were at the place to be searched. Basically, driving a car does not equal storing of clothing at one's residence. This Court should grant rehearing to address these arguments.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully moves for rehearing in this cause.

Respectfully Submitted,

Ken Mahaffey

Ken Mahaffey
Counsel for Appellant
P.O. Box 684585
Austin, Texas 78768
(512) 444-6557
St. Bar. No. 12830050
*Ken_Mahaffey@yahoo.com*

## CERTIFICATE OF SERVICE AND WORD COUNT COMPLIANCE

The above signature certifies that on November 13, 2015, this document was sent by electronic service to the Travis County D.A.'s Office, P.O. Box 1748, Austin TX 78767-1748 and to Frederick Manuel, TDCJ No. 01901942, Polunsky Unit, 3872 FM 350 South, Livingston, TX 77351. The above signature also certifies that the above motion contains 1762 words in compliance Rule 9.4(i)(2)(D) and 9.4(i)(3), Tex. R. App. Proc. (West 2015) (not to exceed 4,500 words ).