**Opinion issued December 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00074-CR

_____

**JUDIST LAMOND BROUSSARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1256403**

## MEMORANDUM OPINION

The State charged Appellant, Judist Lamond Broussard, with capital murder.[1] Appellant pleaded not guilty. The jury found him guilty, and the trial court assessed the automatic punishment at life imprisonment. In one issue on

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011), § 19.03(a)(3) (Vernon Supp. 2015).

appeal, Appellant argues the trial court abused its discretion by denying his motion to suppress his custodial statement.

We affirm.

## Background

The State obtained an arrest warrant for Appellant and arrested him. Before trial, Appellant filed a motion to suppress his custodial statement on the basis that the affidavit in the arrest warrant was insufficient to support his arrest. The affidavit provides, in pertinent part,

> Affiant [E. Cisneros] is employed by the City of Houston and is assigned to the homicide division. Affiant has spoken to D[.] Vasquez, also a homicide investigator with the Houston Police Department[,] and learned the following: on November 19, 2009, D[.] Vaquez was assigned to respond to a homicide that occurred at 1118 Adele, a location within the confines of Harris County, TX. Investigator Vasquez stated that he learned that the deceased, identified as E[.] Velasquez, was shot to death, suffering one gunshot wound to the upper torso. Your affiant was assigned to follow up the investigation . . . . Affiant learned during the course of the investigation that the deceased, E[.] Velasquez, was a confidential informant for the Houston Police Department. Further, your affiant learned that a head of the narcotics organization with which the deceased was working was an individual identified as J[.] Figueredo . . . . Affiant located J[.] Figueredo in federal custody, and in the presence of his lawyer, told affiant that he had information regarding the death of the confidential informant.
>
> J[.] Figueredo told your affiant that on a date prior to Thanksgiving in November 2009, an individual by the name of J[.] Siros told Figueredo that the deceased was the cause of Siros's federal arrest, and that Siros wanted to "take care of it." Figueredo told affiant that J[.] Siros wanted $6000 to "take care of it," which Figueredo took to mean kill the informant. Figueredo told affiant that he "loaned" Siros

$6000 and that Siros said he was going to get an individual identified as "Washington" to commit the murder. Figueredo told affiant that Siros subsequently told him that "Washington" was unable to do it, but that Siros had asked "Ju" to do it.

Your affiant began to attempt to determine the identity of "Ju." In the course of the investigation, federal authorities obtained the cellular phone belonging to J[.] Siros, and downloaded the data, including the address book. In Siros's address book, affiant states he learned the name "Jew" was located, along with a phone number. During the interview of J[.] Figueredo, affiant presented a photo of Judist Broussard, . . . and Figueredo positively identified the known photograph of Judist Broussard as the individual known to him as "Ju."

## Probable Cause

In his sole issue, Appellant argues the trial court abused its discretion by denying his motion to suppress his custodial statement. Appellant asserts that the affidavit for the arrest warrant failed to establish probable cause for his arrest.

## A.    Standard of Review

Typically, we review a trial court's ruling on a motion to suppress under a bifurcated standard of review, reviewing de novo the trial court's application of the law while giving almost total deference to the trial court's finding of historical facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Such deference is not necessary for challenges to probable cause to support the issuance of a warrant, however. *See id.* Instead, we apply a "highly deferential standard" to the ruling of the magistrate that approved the warrant. *Id.* "As long as the

magistrate had a substantial basis for concluding the probable cause existed, we will uphold the magistrate's probable cause determination." *Id.*

## B.    Analysis

"The Fourth Amendment commands that no warrants, either for searches or for arrests, shall issue except upon probable cause." *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007); *see also* U.S. CONST. amend. IV. The Texas Code of Criminal Procedure likewise requires the affidavit supporting an arrest warrant to show that the affiant has good reason to believe that the accused has committed an offense against the State of Texas. TEX. CODE CRIM. PROC. ANN. art. 15.05(2) (Vernon 2015). For determining probable cause, a magistrate is not required to find proof beyond a reasonable doubt or even by a preponderance of the evidence. *Rodriguez*, 232 S.W.3d at 60. Instead, the magistrate is concerned with probability. *Id.* "The test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a 'substantial basis for the issuance of the warrant.'" *Id.* (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S. Ct. 2085, 2088 (1984)). "It is a 'flexible and nondemanding' standard." *Id.*

Given the constitutional preference for police officers to use the warrant process, we provide great deference to magistrates' findings of probable cause. *McLain*, 337 S.W.3d at 271. We do not review the affidavit in a hyper-technical manner. *Id.* Instead, we "interpret the affidavit in a commonsens[e] and realistic

manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Rodriguez*, 232 S.W.3d at 61.

The affidavit in question establishes that Velasquez was murdered on November 19, 2009. He had been shot to death. At the time, Velasquez worked for a "narcotics organization" that had Figueredo as its head. Velasquez, had become an informant for the Houston Police Department.

After being arrested by federal agents, Siros, another member of Figueredo's organization, developed suspicions that Velasquez had been "the cause of" his arrest. Before Thanksgiving 2009, Siros told Figueredo that he wanted to "take care of it," meaning he wanted to kill Velasquez. Figueredo loaned Siros $6,000 to have Velasquez killed. Siros said he would get a man named "Washington" to commit the murder. Later, Siros told Figueredo "that 'Washington' was unable to do it, but that Siros had asked 'Ju' to do it." Figueredo identified Appellant as "Ju."

Appellant argues the affidavit was insufficient to create probable cause because it only states that Siros "asked" Appellant to commit the murder, not that Appellant actually committed the murder. Appellant argues that asking someone to commit a crime does not create an inference that the person actually committed the crime.

Appellant's argument, however, overlooks the great deference with which we must review the affidavit. *See McLain*, 337 S.W.3d at 271–72 (holding reviewing courts must give great deference to magistrate's probable-cause determination). Regardless of what inference would be permissible for this statement in isolation, the facts within the affidavit show that Siros decided to have Velasquez murdered near the time he actually was murdered. The affidavit shows Siros was sincere in his desire to have Velasquez murdered and took multiple steps in furtherance of that goal, including contacting Appellant. The affidavit shows that Siros had Appellant's phone number on his phone. Siros asked Appellant to kill Velasquez. Shortly thereafter, Velasquez was killed. Based on the facts in the affidavit, the magistrate reasonably could have determined that there was a fair probability or substantial chance that Appellant had carried out Siros's request to kill Velasquez.

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

6

Do not publish. TEX. R. APP. P. 47.2(b).