

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1070-19

## ROBERT LEE CRIDER, JR., Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS KERR COUNTY

**NEWELL, J., filed a concurring opinion in which HERVEY, RICHARDSON and SLAUGHTER JJ., joined.**

Today, the Court clarifies our holding in *State v. Martinez*,[1] and reiterates that a defendant maintains an expectation of privacy in the contents of his blood even if police have lawfully seized it pursuant to a

---

[1] 570 S.W.3d 278 (Tex. Crim. App. 2019).

warrant based upon probable cause.[2]  In other words, the Court continues to hold that there are two searches that take place when it comes to blood draws in a DWI case: first, when the police search the defendant's body and seize his blood; and second, when the lab technician analyzes the contents of the blood.[3]  I agree with the Court's holding and join the Court's opinion.

In its opinion, the Court observes that it is of no moment whether we say that authorization to search the blood is implied in the warrant or whether there was necessarily a determination of probable cause for the second search.[4]  Appellant raises some persuasive concerns about implying authorization for a second search from a warrant that only authorizes a seizure.[5] Depending on the type of evidence at issue and the

---

[2] Maj. Op. 2 ("[C]hemical testing of blood constitutes a separate and discrete invasion of privacy for Fourth Amendment purposes from the physical extraction of that blood.").

[3] *Id.* at 2–3 (citing *Martinez*, 570 S.W.3d at 290; *State v. Huse*, 491 S.W.3d 833, 840 (Tex. Crim. App. 2016); and *State v. Hardy*, 963 S.W.2d 516, 523 (Tex. Crim. App. 1997)).

[4] Maj. Op. 4.

[5] Appellant's Reply Br. 11 ("What's to stop the government from retaining blood samples for future analysis or for whatever purpose the government may deem 'reasonable'?  In such a case, who decides what constitutes 'reasonableness'?  These questions cut to the heart of why general search warrants are prohibited by the Fourth Amendment."); *see also Holder v. State*, 595 S.W.3d 691, 702–03 (Tex. Crim. App. 2020) (noting framers of the Texas and United States Constitutions shared a disdain for general warrants and that, in Texas, general warrants "were widely condemned as dangerous to liberty because they permitted authorities to search wherever and seize whomever they desired without evidence of criminal activity.").

probable cause supporting the seizure, implying an authorization for a search of something already seized could lead to the type of "general warrant" rummaging Appellant warns us about.[6] For example, the State at one point in its briefing argues that the seizure warrant of a computer could imply authorization to do an on-site forensic search of that computer.[7] Because I can envision scenarios in which the probable cause to seize an item would not necessarily provide probable cause to conduct a second search of that item, I believe it is better to say that the probable-cause determination that justified the seizure of blood, at least in this case, necessarily constituted a determination of probable cause to also search it.[8] This grounds the analysis upon what the magistrate

---

[6] Appellant's Reply Br. 16–17 ("No one would contest that a warrant authorizing the search of John Doe's home 'for evidence of any and all crimes' could not pass constitutional muster. The same principle holds true here, given that blood is simply a repository for a myriad of potentially incriminating evidence sought by the state."); *see also Walthall v. State*, 594 S.W.2d 74, 78 (Tex. Crim. App. 1980) (noting that the United States and Texas Constitutions prohibit "general warrants"—i.e., warrants that fail to particularly describe the property to be seized and allow "general, exploratory rummaging in a person's belongings") (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)); *Maryland v. King*, 569 U.S. 435, 466 (2013) ("At the time of the Founding, Americans despised the British use of so-called 'general warrants'—warrants not grounded upon a sworn oath of a specific infraction by a particular individual, and thus not limited in scope and application.") (Scalia, J., dissenting).

[7] State's Br. 7–8 & n.24.

[8] *See, e.g., Buckham v. State*, 185 A.3d 1, 19–20 (Del. 2018) (warrant affidavit set out probable cause to search Buckham's cell phone for GPS data to ascertain where Buckham had been during the six weeks prior to his arrest, but the warrant did not limit the search of Buckham's cell phone to any relevant time frame and authorized the search of categories of data that had nothing to do with GPS location information; "The mismatch between the scope of the warrant and the probable cause finding that the trial court cited to support it is readily apparent from the record, and this error led to the admission of evidence that even the State

actually determined and limits the scope of the search. I join the Court's opinion because I believe our holding today is based primarily upon this rationale.

We have previously considered a similar dilemma in an analogous context. In *Faulkner v. State*, this Court evaluated the propriety of the seizure of contraband inside a residence when the search warrant itself only authorized a seizure of the residence, presumably due to a drafting error.[9] We held that the seizure of the contraband found inside the residence was authorized by the warrant because it incorporated the probable cause affidavit by reference and that affidavit also set out probable cause to seize the contraband inside the residence.[10] Though there is a significant difference in the scale of the authorized seizure in *Faulkner* and the one in this case, the rationale in *Faulkner* applies equally to this case. The scope of the warrant should be judged against both the warrant and the probable cause affidavit, rather than by the just the warrant, when the search warrant incorporates the probable cause

---

conceded was important to the trial.").

[9] *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976).

[10] *Id.*

affidavit by reference.[11] And when the search warrant affidavit incorporated by reference in the search warrant reveals that the affiant sought a warrant that authorized the search for or seizure of evidence beyond the scope of the warrant itself, the scope of the warrant is judged by both the affidavit and the search warrant.

In this case, reading both the search warrant and the probable cause affidavit in a common sense manner reveals that the search of Appellant's body and blood for evidence of intoxication falls within the scope of the search warrant and affidavit.[12] Even though the language incorporating the affidavit into the warrant is not repeated as often as it was in *Faulkner*, our decision in *Faulkner* did not turn on the repetition or placement of the referencing language in the search warrant.[13] Further, the affidavit in this case authorizes the search of Appellant's person, not merely the seizure of blood. The affidavit sets out a request for a warrant that will authorize the affiant or his agent to "search the person of the

---

[11] *See also Arrick v. State*, 107 S.W.3d 710, 713–14 (Tex. App.—Austin 2003, pet. ref'd) (upholding seizure of evidence from a residence based upon facts described in a search warrant affidavit even though the search warrant itself only authorized the seizure of the owner of the residence).

[12] *See, e.g., State v. Cuong Phu Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015) (noting that Court should interpret search warrant affidavits in a commonsensical and realistic manner).

[13] *Faulkner,* 537 S.W.2d at 744 ("[I]n interpreting affidavits and search warrants, magistrates and courts must do so in a common sense and realistic fashion and avoid hypertechnical analysis.")

suspected party for the property described above and seize the same as evidence that the offense described was committed and that the suspected party committed the said offense." Appellant's blood by itself is not evidence that Appellant committed the offense of driving while intoxicated. The amount of alcohol within it is.

The common-sense way to read the language in the affidavit is that it included a search within Appellant's person and the seizure of evidence that Appellant committed the offense of driving while intoxicated. The authorization to search within Appellant's body for blood evidence that he committed the offense of driving while intoxicated necessarily includes the search of Appellant's blood within his body—just as the warrant's authorization to search inside the residence in *Faulkner* necessarily included the seizure of contraband within the residence due to the incorporation of the search warrant affidavit seeking the seizure of contraband. Further, this reference to search and seizure of "evidence that shows the offense was committed" also limits the scope of the search to evidence of intoxication and not to a broader search for evidence unrelated to the crime such as DNA. Reading the search warrant and the affidavit to authorize only the seizure of blood, and not the evidence within the blood, that shows Appellant committed the offense applies an

unduly technical and restrictive reading of the search warrant affidavit that fails to allow for any reasonable inferences that the issuing magistrate could have made.[14]

Of course, as Appellant points out, this issue could have been avoided entirely if the warrant here had included extra language to specify that the warrant authorized the search of the blood for evidence of intoxication after it was seized. That second search, as the Court rightly points out, was justified by the same probable cause that justified the seizure of the blood in the first place. I have little doubt that after this case, and in cases like it, law enforcement officers will endeavor to specify that their blood warrants authorize both a search and seizure. But the failure to do so in this case doesn't render the search of Appellant's blood pursuant to a warrant unreasonable.

With these thoughts, I join the Court's opinion.

Filed: September 16, 2020

Publish

---

[14] *See, e.g., Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007) ("The Supreme Court has repeatedly reminded reviewing courts that they should 'not invalidate the warrant by reading the affidavit in a hypertechnical rather than a commonsense, manner.'") (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see also Illinois v. Gates*, 462 U.S. 213, 240 (1983) ("Nothing in our opinion in any way lessens the authority of the magistrate to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant; indeed, he is freer than under the regime of *Aguilar* and *Spinelli* to draw such inferences, or to refuse to draw them if he is so minded.").