Affirmed and Memorandum Opinion
filed May 10, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00616-CR



Darius Lemon, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 262nd District Court

Harris County, Texas

Trial Court
Cause No. 1247995



 

MEMORANDUM OPINION 

A jury convicted appellant Darius Lemon of capital
murder, and he was automatically sentenced to life without parole.  He
challenges his conviction on the grounds that the trial court committed
reversible error by (a) denying his motion to suppress evidence and (b)
admitting a photograph that was inadmissible under the Rules of Evidence.  We
affirm.

BACKGROUND

Appellant, his cousin, J.G., and J.G.’s girlfriend,
B.V.,[1]
were together on August 14, 2008, on the day the decedent, Jesus Veliz, was
murdered.  B.V. had given Jesus and his friend, Eduin Deras, a shotgun a few
weeks before the offense.  Eduin and Jesus decided that they wanted to sell the
shotgun.  When B.V. informed them that she had a buyer for the gun, Eduin and
Jesus agreed to meet B.V. and the buyer of the gun at a location in northeast
Harris County known as “the End.”  Appellant drove J.G., B.V., and B.V.’s
sister, K.V., in his red Ford Taurus to the End.  They arrived at the End before
Eduin and Jesus. 

When Eduin and Jesus arrived at the End in Eduin’s tan
Suburban, B.V. and K.V. greeted Jesus, whom they both knew.  After talking to him
for a few moments, B.V. motioned to appellant and J.G. to come over.  Appellant
spoke to Eduin about the shotgun and got into the backseat of Eduin’s vehicle to
look at it.  While appellant was looking at the shotgun, Eduin noticed that
Jesus was looking out the front window of the Suburban with a frightened
expression on his face.  Eduin turned to see what Jesus was looking at and saw
J.G. pointing a gun at him and Jesus.  J.G. ordered Eduin and Jesus to get out
of the car as Eduin heard appellant racking the shotgun behind him.  When Eduin
and Jesus did not get out of the car immediately, appellant shouted at them to
get out of the car, and they did.  Appellant pointed the shotgun at Eduin, and
J.G. ordered Eduin and Jesus to get down on their knees.  An unidentified
Hispanic male came out from behind a brown van with a rifle and joined
appellant and J.G.  When Eduin and Jesus dropped to their knees, J.G. ordered
B.V. and K.V. to search their pockets and take what they found.  B.V. and K.V.
complied and threw the stolen items, including wallets and a cell phone, into
appellant’s car.  

After B.V. and K.V. had searched Eduin and Jesus,
J.G. ordered Eduin and Jesus to get up and start walking down some nearby
railroad tracks.  J.G. also ordered B.V. and K.V. to drive away in the
Suburban.  Jesus and Eduin began walking towards the railroad tracks. Appellant,
J.G., and the unidentified male followed behind them, although appellant
claimed that he did not walk on the railroad tracks.  Eduin testified that
appellant discharged the shotgun twice near his ear as he was walking on the
tracks.  

As Eduin and Jesus were walking away, appellant,
J.G., and the unidentified individual began firing shots at them.  Jesus was
struck by one of the bullets from the gun J.G. was shooting.  He fell to the
ground, but got up and continued to run away.  When he fell again, he could not
get up.  Eduin turned back for Jesus, but when Jesus could not get up, Eduin
ran for the nearby woods.  Eduin escaped without being shot and got lost in the
woods for about an hour.  Eventually, he made his way out of the woods and
found someone’s home.  The homeowner let him in to use the phone to call 911
when Eduin explained what had happened.  

Meanwhile, J.G. and appellant left the End in
appellant’s car.  They caught up with K.V. and B.V., who were in Eduin’s
Suburban.  J.G. got into the Suburban with B.V., and K.V. got into appellant’s
car with him.  K.V. and appellant followed J.G., who drove the Suburban to a
road near a bayou and then drove the car up over the curb and into the woods
near the bayou.  After a short time, J.G. and B.V. walked out of the woods and
got into the car with appellant and K.V.  J.G. and B.V. had taken some items
out of the Suburban and then disposed of the automobile in the bayou.

While J.G. and B.V. were abandoning the Suburban, another
individual who had witnessed the shooting called 911.  Officers arrived at the End
shortly after the incident occurred to find Jesus dead at the scene.  An
officer later transported Eduin back to the crime scene.  Eduin spoke to the
investigating officer and walked him through the offense.  Eduin only knew
B.V.’s first name, and he did not know the identities of J.G., the unknown
male, and appellant.  

The investigating officer discovered B.V.’s identity
through Eduin early the next morning.  The officer then identified J.G. through
a database by his nickname and description.  Finally, he identified appellant
as a participant.  Eduin positively identified all three individuals as having
been involved in the robbery/murder.  K.V. learned from the morning news the
next day that a murder had occurred.  She contacted police to describe the
incident and explain her role in the matter.  She corroborated Eduin’s statement
that appellant had pointed the shotgun at him.  While K.V. was not charged in
connection with this offense, B.V. and J.G. were arrested.  

Based on interviews with Eduin, B.V., and another
witness, the investigating officer obtained a search warrant for appellant’s
apartment and car and an arrest warrant for appellant.  At appellant’s
apartment, officers discovered several guns, including a shotgun hidden under
appellant’s mattress and a gun that matched the description of the one used by
J.G. in the offense.  They also discovered several spent casings in appellant’s
car.  Appellant was subsequently arrested and indicted for capital murder.   

After hearing testimony, the jury convicted appellant
of capital murder.  He was automatically sentenced to confinement for life by
the trial court.  See Tex. Penal Code Ann. § 12.31(a)(2) (West Supp.
2009) (requiring that adult adjudged guilty of a capital felony in a case where
the State does not seek the death penalty “shall be” punished by imprisonment
for life without parole).  This appeal timely followed.

ANALYSIS

A.        Probable Cause
for Search Warrant

In his first issue, appellant complains that the
trial court committed reversible error by denying his motion to suppress
evidence obtained under an unlawful search warrant issued without probable
cause.  The Fourth Amendment to the United States Constitution provides that no
warrants may issue, whether for arrest or search, in the absence of probable
cause.  U.S. Const. amend. IV; Henry v. United States, 361 U.S. 98, 100
(1959); Rodriguez v. State, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007). 
More specifically, a magistrate may not issue a search warrant without first
finding probable cause “that a particular item will be found in a particular
location.”  Rodriguez, 232 S.W.3d at 60.  In reviewing an affidavit
attached to an application for a search warrant, “[t]he test is whether a
reasonable reading by the magistrate would lead to the conclusion that the
affidavit provided a ‘substantial basis for the issuance of the warrant.”’  Id.
(quoting Massachusetts v. Upton, 466 U.S. 727, 733 (1984)).

To determine probable cause, the magistrate must
consider the totality of the circumstances in deciding whether there is a fair
probability that contraband or other evidence of a crime will be found at the
specified location.  Id.  A finding of “fair probability” cannot be
based on “mere ratification of the bare conclusions of others.”  Illinois v.
Gates, 462 U.S. 213, 239 (1983).  Our review of the magistrate’s
determination is highly deferential and recognizes that the magistrate may draw
reasonable inferences from statements in the affidavit.  Rodriguez, 232
S.W.3d at 61.  Ultimately, our inquiry focuses on “whether there are sufficient
facts, coupled with inferences from those facts, to establish a ‘fair
probability’ that evidence of a particular crime will likely be found at a
given location.  The issue is not whether there are other facts that could
have, or even should have, been included in the
affidavit . . . .”  Id. at 62.

The affidavit in support of the search warrant contains
the following information:

·       
The affiant, investigating officer H. Palacios, a deputy in the
homicide division of the Harris County Sheriff’s Office, observed the body of
the decedent at the scene on August 14, 2008.

·       
Deputy Palacios interviewed Eduin (spelled “Adwin” in the
affidavit) Deras, who informed him that he and the decedent had gone to the
scene to meet with B.V. to sell a shotgun.  Eduin informed Palacios that B.V.
approached the passenger side of his vehicle and spoke with the decedent.  Shortly
afterwards, Eduin saw an individual he later identified as J.G. step out of a
red vehicle and approach his vehicle pointing a handgun.  A black male exited
the red car armed with a shotgun.  J.G. then ordered Eduin and the decedent to
exit their vehicle, kneel down, and not look at him or his companions.

·       
Eduin stated that B.V. removed his and the decedent’s personal
belongings after J.G. told her to do so.  J.G. then ordered Eduin and the
decedent to walk towards a nearby set of railroad tracks.  Eduin and the
decedent began walking towards the tracks while J.G. and “the two other males
who had been in the red vehicle followed them.”  Eduin heard several gunshots
coming from behind him, and he began running.  He heard the decedent scream and
saw the decedent grab his leg.  The decedent got up and continued running until
he collapsed and slid down the embankment, where Palacios later discovered his
body.

·       
Palacios obtained information from a witness with a prior
conviction for misdemeanor possession of marijuana that led him to develop J.G.
as a suspect.  Eduin identified J.G. from a photospread.  J.G. was arrested and
admitted his involvement in the robbery.  He also implicated appellant and
stated that appellant had exhibited a shotgun during the offense.  He told
Palacios that appellant had taken the shotgun used in the robbery from the
scene.  J.G. informed Palacios that appellant was his cousin and provided
appellant’s address.

·       
Palacios was informed by two other deputies who had interviewed
B.V., a known party to the crime, that she had admitted her involvement and
stated that appellant had supplied the weapons used in the robbery.  

·       
Eduin told Palacios that during the robbery, appellant and his
co-defendants took a wallet, a cellular telephone with T-Mobile service,
$14.00, and his tan Suburban.  Palacios checked a computer database and
discovered that appellant had been arrested in the past in a red, four-door
Ford Taurus.

Based on this information, Palacios requested a
search warrant for appellant’s apartment and car and a warrant for the arrest
of appellant for the offense of capital murder.  The magistrate signed the
search and arrest warrant at 2:00 a.m. on August 17, 2008.  The search portion
of the warrant states:

YOU ARE THEREFORE COMMANDED to forthwith search the place
therein named, to wit:  4990 Tierwester, Houston Texas, Harris County, Texas,
with the authority to search for and seize any and all firearms that may be
found there . . . including, but not limited to any long barrel firearms,
handguns, shotguns, and items taken in the capital murder of Jesus Veliz,
namely a cellular telephone of T-Mobile service belonging to Jesus Veliz, a
wallet belonging to [Eduin] Deras and a black pistol grip shotgun taken from
complainant [Eduin] Deras and to search a red in color Taurus motor vehicle
which bears the Texas License Plate of L59*ZCM.

Based on the information in the affidavit, the
magistrate could have concluded that there was a fair probability that weapons
used during the offense and property taken from Eduin and Jesus would be
located in appellant’s apartment or car.  See id. at 60.  In addition,
the weapons used and the property taken were described with sufficient
specificity in the affidavit.  We conclude that the affidavit at issue here
contains sufficient facts, coupled with inferences from those facts, to
establish a “fair probability” that the specified evidence of this particular
crime would likely be found at the given locations.  See id. at 62.  Accordingly,
we overrule appellant’s first issue.

B.        Admission of Photograph

In his second, third, and fourth issues, appellant
contends that the trial court committed reversible error by admitting, over his
objection, a photograph of appellant, J.G., and an unidentified third person
holding guns pointed at the head of another individual.  The State claims that
appellant “opened the door” to the admission of this photograph during his
testimony.

We review the trial court’s evidentiary rulings under
an abuse-of-discretion standard.  Powell v. State, 63 S.W.3d 435, 438
(Tex. Crim. App. 2001); Fox v. State, 283 S.W.3d 85, 92 (Tex. App.—Houston
[14th Dist.] 2009, pet. ref’d).  Under this standard, the trial court does not
abuse its discretion if its ruling was within the zone of reasonable
disagreement.  Powell, 63 S.W.3d at 438.  Generally, the erroneous
admission or exclusion of evidence is non-constitutional error governed by
Texas Rule of Appellate Procedure 44.2(b) if, as here, the trial court’s ruling
merely offends the rules of evidence.  See Solomon v. State, 49 S.W.3d
356, 365 (Tex. Crim. App. 2001).  In our review of non-constitutional error, we
are to disregard errors, defects, irregularities, or variances that do not
affect substantial rights of the accused.  Tex. R. App. P. 44.2(b).  A “substantial
right” is affected when the error had a substantial and injurious effect or influence
in determining the jury’s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  Error is harmless, however, if, after examining the
record as a whole, we are reasonably assured that the error either did not
influence the factfinder’s decision or had only a slight effect.  See Garcia
v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

On direct examination, the following exchange
occurred between appellant and his trial counsel:

Q.        You’re six years older than [J.G.] and you have a
shotgun, why didn’t you say something to him?

A.        I was - - I never had been in anything like that,
somebody pointing guns at people, you know, like he was going to shoot them and
waving it around and having people on their knees and taking things from them. 
I never seen a robbery.

The prosecutor cross-examined
appellant with a follow-up question:

Q.        And I know you said that earlier.  I think your
exact words were:  I never seen anybody robbed.  I’ve never been in a position
where somebody was on their knees with a gun pointed at their head.  Isn’t that
what you said?

A.        Yes.

Q.        Just a few minutes ago when your Defense attorney
was asking you questions?

A.        Yes.

Q.        That’s not really true is it?  It’s not really
exactly the truth, is it?

A.        That is the truth.

Q.        And you’re quite comfortable around guns and you
handle them a lot and you have been in a position where a gun’s at someone’s
head, haven’t you?

A.        No, I have not.

Q.        Well, in fact, you’ve been in a position where
you’ve had a gun at somebody’s head right?

Appellant’s trial counsel
objected at this point, asserting that the prosecutor was referring to a
photograph of “some kids making fun and joking.”  The prosecutor responded by
stating that appellant “opened the door on direct.”  The trial court agreed with
the prosecutor, permitted her to continue this line of questioning, and
admitted the photograph described above.  Appellant objected to the admission
of the photograph under Texas Rules of Evidence 402, 403, and 608.

Rule 608(b) expressly bars the admission of
“[s]pecific instances of the conduct of a witness, for the purpose of attacking
or supporting the witness’ credibility, other than conviction of a crime as
provided in Rule 609.”  Tex. R. Evid. 608(b).  Such specific instances of
conduct may neither be inquired into on cross-examination of the witness nor
proved by extrinsic evidence.  Id.  However, specific instances of
conduct may be admissible in three instances:  (1) to expose bias or interest;
(2) to correct any affirmative misrepresentations made on direct examination;
or (3) to demonstrate a lack of capacity.  See Lagrone v. State, 942
S.W.2d 602, 613 (Tex. Crim. App. 1997) (en banc).  

Here, on direct examination, appellant stated that he
had “never been in anything like that, somebody pointing guns at people . . . .” 
(emphasis added).  The State attempted to correct this affirmative
misrepresentation on cross-examination by introducing a photograph of appellant
himself pointing a gun at the head of another individual.  Under these
circumstances, we cannot say that the trial court abused its discretion by
admitting this photograph to correct appellant’s misrepresentation.  See
id.  

Appellant further claims that this evidence was more
prejudicial than probative.  See Tex. R. Evid. 403.  Rule 403 provides
in pertinent part that, even if evidence is relevant, it may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice. 
Id.  In keeping with the presumption of admissibility of relevant evidence,
trial courts should favor admission in close cases.  Montgomery v. State,
810 S.W.2d 372, 375 (Tex. Crim. App. 1990) (en banc).

The term “probative value” refers to the inherent
probative force of an item of evidence—that is, how strongly it serves to make
more or less probable the existence of a fact of consequence to the
litigation—coupled with the proponent’s need for that item of evidence.  Gigliobianco
v. State, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).  “Unfair prejudice”
refers to a tendency to suggest decision on an improper basis, commonly, though
not necessarily, an emotional one.  Id.  Evidence might be unfairly
prejudicial if, for example, it arouses the jury’s hostility or sympathy for
one side without regard to the logical probative force of the evidence.  Id.
at 641.  In sum, as is relevant here, a trial court must balance (1) the
inherent probative force of the proffered item of evidence along with (2) the
proponent’s need for that evidence against (3) any tendency of the evidence to suggest
decision on an improper basis.  Id. at 641–42.

In support of his argument, appellant contends:

Here, the state proffered and the trial court admitted a
·highly prejudicial photograph of [appellant]: gunplay and gang signs are
highly prejudicial signs of violent character, and the state offered no
evidence that the gun in the photograph was connected with the crime at issue
or that [appellant] was at all connected with any gang. 

First, nothing in the record
indicates that the hand sign shown by one of the individuals in the photograph
is a gang sign.  In fact, there is no mention whatsoever that appellant was
involved in a gang.  Thus, appellant’s reliance on cases involving evidence of
gang affiliation is misplaced.[2] 
Second, the only evidence the State offered to correct the affirmative
misrepresentation appellant made during direct examination was this
photograph.  Thus, the State, as the proponent of the evidence, needed this
evidence, and the photograph had inherent probative force to correct appellant’s
misrepresentation.  See id.  Although this photograph is obviously
prejudicial, we cannot say that the trial court abused its discretion in
determining that its probative force was not substantially outweighed by the
danger of unfair prejudice.  

Moreover, even if this photograph were erroneously
admitted by the trial court, we conclude that any error in its admission was
harmless.  This photograph was simply one small piece of evidence in an
overwhelming sea of evidence that appellant was guilty of capital murder. 
After its admission into evidence, the State made no mention of it and did not
refer to it in closing argument.  In addition, several photographs depicting
appellant handling guns, as well as numerous photographs of guns that appellant
admitted to owning and selling, along with stacks of cash beside these guns,
were admitted into evidence.  Eduin and K.V.’s testimony, much of which was
corroborated by appellant himself, provided more than sufficient evidence that
appellant was either a party or co-conspirator to capital murder.  Appellant
admitted that he stole the shotgun and that J.G. intentionally shot the
decedent.  He drove J.G. to the scene, left the scene with J.G. and the
shotgun, waited for J.G. and B.V. to dispose of Eduin’s Suburban, and never did
anything to distance himself from this offense or stop it from happening. 
Under these circumstances, we have fair assurance that error in admitting this
photograph, if any, did not have a substantial and injurious effect or influence
in determining the jury’s verdict.  See Casey v. State, 215 S.W.3d 870,
885 (Tex. Crim. App. 2007) (determining, after examining record as a whole,
that admission of several photographs depicting the defendant urinating on a
building and flashing gang signs did not have a substantial and injurious
effect on jury’s verdict.).  For the foregoing reasons, we overrule appellant’s
second, third, and fourth issues.

CONCLUSION

Having overruled each
of appellant’s four issues, we affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

Panel consists of Chief Justice Hedges
and Justices Seymore and Boyce.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Appellant’s co-conspirators, J.G. and B.V., were both under the age of eighteen
at the time of the commission of this offense.  We thus refer to them by
initials only to protect their identities.  K.V. was also under the age of
eighteen at the time of the offense, so we refer to her by her initials as
well.





[2]
Appellant relies on Casey v. State, 215 S.W.3d 870, 884–85 (Tex. Crim.
App. 2007).  In Casey, the Court of Criminal Appeals concluded that
several photographs of appellant, including ones in which he was urinating on
the side of a building and flashing a gang sign, were improperly admitted over
the appellant’s Rule 403 objection.  Id.  However, the Court went on to
conclude that their admission was harmless.  Id. at 885.