ACCEPTED
13-14-00588-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/2/2015 11:31:04 AM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00588-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/5/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

**THE STATE OF TEXAS,**
**Appellant,**

**v.**

**CHRISTOPHER ALEXSON PAPPILLION,**
**Appellee.**

On Appeal from the 377th District Court
Victoria County, Texas
Cause Number 13-2-27,162-D

**BRIEF FOR THE STATE**

**STEPHEN B. TYLER**
Criminal District Attorney
Victoria County, Texas

**BRENDAN WYATT GUY**
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895
(On Appeal)

Attorneys for the State of Texas

**ORAL ARGUMENT NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a) (2003), the parties to the suit are as follows:

| | |
|---|---|
| **APPELLANT** | **The State of Texas** |
| **APPELLEE** | **Christopher Alexson Pappillion** |
| **TRIAL JUDGE** | **The Honorable Robert Cheshire**<br>**377th District Court**<br>**Victoria, Texas** |
| **TRIAL PROSECUTOR** | **Edward Paul Wilkinson**<br>State Bar No. 24052674<br>Assistant Criminal District Attorney<br>205 N. Bridge St. Ste 301<br>Victoria, Texas 77901-6576 |
| **TRIAL DEFENSE ATTORNEY** | **Brent Andrew Dornburg**<br>State Bar No. 24003930<br>120 N. Main Street<br>Victoria, Texas 77901 |
| **APPELLATE STATE'S ATTORNEY** | **Brendan Wyatt Guy**<br>State Bar No. 24034895<br>Assistant Criminal District Attorney<br>205 N. Bridge St. Ste 301<br>Victoria, Texas 77901-6576 |
| **APPELLATE DEFENSE ATTORNEY** | **Brent Andrew Dornburg**<br>State Bar No. 24003930<br>120 N. Main Street<br>Victoria, Texas 77901 |

# TABLE OF CONTENTS

**PAGE (S)**

**TABLE OF CONTENTS** ............................................................................**iii**

**INDEX OF AUTHORITIES**................................................................**iv-v**

**STATEMENT OF THE CASE**..............................................................**1-2**

**ISSUES PRESENTED**...........................................................................**2**

**STATEMENT OF THE FACTS** .........................................................**2-7**

**SUMMARY OF ARGUMENT**...........................................................**7-10**

**ARGUMENT**....................................................................................**10-27**

   **I.** **The trial court erred in overruling the magistrate's
finding that the search warrant affidavit established
probable cause** ........................................................................**10-17**

   **II.** **The trial court erred in finding a "reckless disregard
for the truth"in the search warrant affidavit**........................**18-25**

  **III.** **Even if there was a *Franks* violation, the trial court
still erred by suppressing the evidence in this case** .............**25-27**

**PRAYER**..............................................................................................**28**

**SIGNATURE**.......................................................................................**28**

**CERTIFICATE OF COMPLIANCE** ...................................................**29**

**CERTIFICATE OF SERVICE** ............................................................**30**

# INDEX OF AUTHORITIES

## United States Supreme Court Cases

*Franks v. Delaware,* **98 S. Ct. 2674 (1978)**......... 2, 9-10, 18-19, 22, 24-26

*Illinois v. Gates,* **103 S. Ct. 2317 (1983)** ................................................ 22

*Texas v. Brown,* **460 U.S. 730 (1983)**........................................................ 12

## Texas Cases

*Harris v. State,* **227 S.W. 3d 83 (Tex. Crim. App. 2007)** ....................... 26

*Flores v. State,* **319 S.W. 3d 697 (Tex. Crim. App. 2010)** .........11-14, 17

*Johnson v. State,* **68 S.W.3d 644 (Tex. Crim. App. 2002)**..................... 20

*Rodriguez v. State,* **232 S.W. 3d 55 (Tex. Crim. App. 2007)** ......... 11, 16, .........................................................................................................17, 23-24

*State v. McLain,* **337 S.W. 3d 268 (Tex. Crim. App. 2011)**............10-12, ........................................................................................................... 17, 22

## Texas Statutes

**TEX. CODE CRIM. PROC. ANN. art. 18.01 (West 2014)**................... 16

**TEX. CODE CRIM. PROC. art. 38.141 (West 2005)** .......................... 24

**TEX. HEALTH & SAFETY CODE ANN. § 481.002 (West 2014)**...... 25

**TEX. HEALTH & SAFETY CODE § 481.112 (West 2010)**.................. 25

## Texas Rules

**TEX. R. APP. 9.4**.................................................................... **29**

**TEX. R. APP. 38.1**....................................................................... **ii**

IN THE COURT OF APPEALS
FOR THE THIRTEEN DISTRICT OF TEXAS
AT CORPUS CHRISTI

THE STATE OF TEXAS……………………………………..Appelant

v.

CHRISTOPHER ALEXSON PAPPILLION,.……………………...Appellee

* * * * *

**STATE'S BRIEF ON THE MERITS**

* * * * *

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal

District Attorney, Stephen B. Tyler, and as Appellant in the above numbered

and entitled cause, and files this the Appellant's brief showing:

## STATEMENT OF THE CASE

On April 3, 2014, Appellee was charged by indictment with one count

of Manufacture or Delivery of Substance in Penalty Group 1 in an amount of

four grams or more but less than 200 grams, one count of Manufacture or

Delivery of a Substance in Penalty Group 1-A in an amount of 80 abuse

units or more but less than 4,000 abuse units, one count of Manufacture or

Delivery of a Substance in Penalty Group 2 in an amount of 400 grams or

more, one count of Possession of Marihuana in an amount of five pounds or less but more than four ounces, and one count of Manufacture or Delivery of a Substance in Penalty Group 3 or 4 in an amount of 28 grams or more but less than 200 grams. [CR-I-5-6]. On August 21, 2014 Appellee filed a motion to suppress. [CR-I-20-24]. A hearing was held on that motion on September 4, 2014. [RR-I-1]. On October 7, 2014, the Honorable Robert Cheshire presiding, granted Appellee's motion to suppress with a written order that included findings of fact and conclusions of law. [CR-I-27]. The State timely filed its notice of appeal on October 8, 2014. [CR-I-28-31].

## ISSUES PRESENTED

1) Did the trial court err in overruling the magistrate's conclusion that the affidavit in this case provided probable cause to search Appellee's residence?

2) Did the trial court err in finding there was a reckless disregard for truth in the search warrant affidavit?

3) If there was a *Franks* violation was suppression of the evidence the appropriate remedy in this case?

## STATEMENT OF THE FACTS

On January 16, 2014, officers of the Victoria Police Department executed a warrant at Appellee's residence. [CR-I-20]. That warrant was

issued by the Honorable Jack W. Marr, District Judge of the 24th Judicial District Court on January 14, 2014. [DE-1]. Judge Marr reviewed a sworn affidavit submitted by Detective Dennis Paine of the Victoria Police Department on January 14, 2014 prior to issuing the search warrant. [DE-2].

Clause 7(a) of the affidavit stated that the Confidential Informant (hereafter CI) who was providing the information to the investigating officers has proven to be reliable and credible and had been verified by officer observation and monitored recordings. [DE-2-pg.3].

Clause 7(c) of the affidavit confirmed that the CI was searched for contraband by the investigating officers prior to conducting this operation without any contraband being located on his person. *Id.* That clause also stated that the investigating officers outfitted the CI with a body wire to provide audio surveillance of the purchase. *Id.*

Clause 7(d) of the affidavit then described how the CI was given $300 of United States currency by the Victoria Police Department to purchase Cocaine with and how the CI went to 201 Wearden Drive, where the purchase of Cocaine took place. *Id.* This clause further stated that the CI was monitored physically and through the body wire throughout the duration of the purchase. *Id.* This clause then described how the CI's vehicle was parked in the driveway of the 201 Wearden Drive location for several

minutes and how after the purchase was complete the CI left the location. *Id.* This recorded audio as well as the purchased contraband, constitute pre-warrant evidence other than a statement of the person to whom the offer was made.

Clause 7(g) of the affidavit attested that the 201 Wearden Drive residence belonged to the Appellee and noted that the Victoria Police Department had intelligence reports from multiple sources that Appellee was a drug dealer. [DE-2-pg. 4].

Clause 7(h) of the affidavit declared that an anonymous source had reported that Appellee had a safe full of illegal Steroids and other contraband. *Id.*

Cluase 7(i) of the affidavit established that the residence at 201 Wearden Drive was owned by John and Lita Pappillion, the Appellee's parents. *Id.*

At no place in the affidavit is there any assertion that it was the CI ever went inside the residence at 201 Wearden Drive or that the CI himself purchased narcotics from someone inside the residence; nor is there representations of manner and means of delivery (i.e. suggesting actual rather than constructive transfer or transfer instead of possession with intent to deliver). [DE-2].

Appellee's motion to suppress alleged that the search warrant in this case was defective because the affidavit did not reflect sufficient probable cause to justify the issuance of a search warrant. [CR-I-21-22]. Appellee also alleged that the issuing magistrate had been misled by information in the affidavit that the submitting officer knew was false or would have known to be false if not for a reckless disregard for the truth. [CR-I-22].

At the suppression hearing, Appellee offered three documentary items of evidence: the search warrant at issue in the case (Defense Exhibit 1), the affidavit for that search warrant (Defense Exhibit 2), and the officer's returned inventory of the items obtained pursuant to the search warrant (Defense Exhibit 3). [RR-I-6].

Appellee then called Detective Dennis Paine of the Victoria Police Department to testify. [RR-I-7]. Detective Paine testified at this hearing that the CI did not make the actual purchase (delivery by actual transfer) of the cocaine but instead it was a third party (delivery by constructive transfer or by parties) who went into the residence at 201 Wearden Drive and purchased the cocaine. [RR-I-8]. Detective Paine that described how the CI had first attempted to purchase cocaine from a man named Nathan but that Nathan didn't have any cocaine. [RR-I-9]. Detective Paine then described how the CI and Nathan then met with a Mr. Jose Partida, who also did not

have any cocaine. *Id.* Detective Paine then described how the CI, Nathan, and Mr. Partida then met with a Mr. Ivan Casas who also did not have any cocaine. [RR-I-9-10]. Detective Paine then testified as to how Mr. Casas took them to 201 Wearden Drive, went into the residence, and then returned with the cocaine (demonstrative that Mr. Casas or persons within the residence delivered and possessed with intent to deliver controlled substances). [RR-I-10]. Detective Paine then acknowledged that he had never worked with Mr. Casas before and could not attest to Mr. Casas's trustworthiness. [RR-I-11].

Detective Paine then testified that the CI did not witness the transaction inside 201Wearden Drive, had not gone inside the residence, and had purchased the drugs from Mr. Casas rather than from inside the residence. *Id.* Detective Paine also stated, as heard in the CI's covert audio recording, that Mr. Casas had stated he had purchased the cocaine from inside the residence from a friend of the Appellee's. [RR-I-11].

On cross-examination Detective Paine explained that the reason he did not put Nathan, Mr. Partida, or Mr. Casas's names in the affidavit was to help protect the identity of the CI. [RR-I-13]. (The combination of naming all persons present but the CI, the uniqueness that grouping of persons at the residence and the shortness of time before the warrant execution eliminates

alternative identities for the CI).  Detective Paine also confirmed that the police were monitoring what was being said in the CI's vehicle throughout this entire episode.  *Id.*  Detective Paine also established that from where the CI was parked he would have been able to see Mr. Casas go into the residence at 201 Wearden Drive.  [RR-I-14].  Detective Paine then confirmed there was no reason to believe that the CI had not obtained the cocaine from that location.  *Id.*

The trial court found the information in the affidavit was conclusory and lacked sufficient underlying facts to establish probable cause.  [CR-I-27].  The court specifically noted that there was nothing in the affidavit indicating that the contraband obtained at the 201 Wearden address could only have been obtained from inside the residence.  *Id.*  The trial court also concluded that the affidavit contained a reckless disregard for the truth since it created an inference that the CI went inside the residence and purchased the cocaine while inside the residence.  *Id.*  Accordingly, the trial court ordered the evidence obtained pursuant to the search warrant for Appellee's residence be suppressed.  *Id.*

## SUMMARY OF THE ARGUMENT

The affidavit stated the specific facts that caused the affiant officer and issuing magistrate to reasonably believe a crime <u>probably</u> had or would

soon occur. Mere fair probability in fact as measured by a reasonable issuing magistrate is the benchmark of sufficiency. Implicit in the trial court's finding is a narrowing of the statutory definition of delivery and increasing of the states statutory burden. Issuance of a search warrant and determination of probable cause does not oblige the adjudicative requirement of corroboration, the elimination of all alternative persons and explanations, proof beyond all reasonable doubt of each element or recitation of all known information. The affiant officer and issuing magistrate rightly formed a reasonable belief in probable criminality.

The issuing magistrate had a substantial basis for concluding there was probable cause to search Appellee's residence. The magistrate had information that a drug deal occurred at Appellee's residence and that the police had intelligence reports that Appellee himself was a drug dealer. Based on those facts, it was reasonable for the magistrate to infer that Appellee was involved in the drug transaction and that Appellee had additional narcotics in his residence.

Furthermore, the trial court was required to give great deference to the issuing magistrate's conclusions when reviewing the legality of the search warrant. The trial court failed to do so and thus committed reversible error

in finding there was no probable cause to support the issuance of a search warrant in this case.

The trial court also erred by finding a "reckless disregard for the truth" in the information provided in the affidavit. Every statement made in the affidavit was a true statement and thus there was no justification for finding a *Franks* violation. Nor could the trial court infer such a violation based on information omitted from the affidavit. As a factual matter there was no basis for concluding the affidavit made a false inference, and as a matter of law it was inappropriate for the trial court to make a *Franks* determination on the basis of information being left out of the affidavit, since there is no basis in Texas law for finding a *Franks* violation based on an omission, and in fact the Court of Criminal Appeals has cautioned courts to judge affidavits by the facts contained within them rather than on what was omitted from the affidavit.

In the alternative, even if the trial court was correct that there was a *Franks* violation, it still erred by ordering the suppression of the evidence obtained under this search warrant. The remedy for a *Franks* violation is only to remove the false statement from the affidavit. In this case the only portion of the affidavit that was deemed false by the trial court was the trial court's own inference about what the affidavit was asserting. Even if the

trial court's inference was removed from the affidavit though, the remaining undisputed, truthful portions of the affidavit were still sufficient to establish probable cause. As such the warrant would still be valid even after an adverse *Franks* ruling which means the evidence obtained pursuant to that warrant should not have been suppressed.

## **ARGUMENT**

### I. The trial court erred in overruling the magistrate's finding that the search warrant affidavit established probable cause

The appellate courts normally review a trial court's ruling on a motion to suppress by applying a bifurcated standard of review where they give near total deference to the trial court's findings as to historical facts while reviewing *de novo* the trial court's application of the law. *State v. McLain,* 337 S.W. 3d 268, 271 (Tex. Crim. App. 2011). However, the legal analysis is different when the suppression hearing concerned the trial court determining whether there was probable cause to support the issuance of a search warrant. In such circumstances there is no credibility determination for the trial court to make, since the trial court's review is restricted to the four corners of the affidavit. *Id.* Therefore reviewing courts are to apply a highly deferential standard when evaluating a magistrate's decision to issue a warrant. *Id.* As long as the issuing magistrate had a substantial basis for

concluding that probable cause existed, the issuing magistrate's finding of probable cause must be upheld. *Id.*

Accordingly, the reviewing court must refrain from interpreting the affidavit in a hyper-technical manner and must instead interpret the affidavit in a commonsensical and realistic manner that recognizes that the issuing magistrate is entitled to make reasonable inferences when reviewing the affidavit. *Id.* Additionally, when in doubt the reviewing court must defer to all reasonable inferences that the issuing magistrate could have made. *Id.* Furthermore, the issuing magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might have come to a different conclusion itself. *Flores v. State,* 319 S.W. 3d 697, 702 (Tex. Crim. App. 2010). Giving great deference even in close cases to the findings of the magistrates is vital as it helps promote the Constitution's preference for warrants by encouraging police officers to utilize the warrant process rather than to try and find an exception to the warrant requirements. See *Rodriguez v. State,* 232 S.W. 3d 55, 59 (Tex. Crim. App. 2007). This obligation to give great deference to the issuing magistrate falls on both trial courts and appellate courts. *McLain,* 337 S.W. 3d at 271-272.

With that legal framework in mind, it is clear the trial court erred in overruling District Court Judge Marr's determination of probable cause in

this case. Probable cause exists when under the totality of circumstances there is a fair probability that contraband will be found at a specific location. *Id.* at 272. This is a non-demanding standard. *Id.* It does not require certainty that contraband will be found at that location to establish probable cause. It does not even require a preponderant probability that contraband will be found there. See *Texas v. Brown,* 460 U.S. 730, 742 (1983). There just has to be a "fair probability", and the affidavit in this case provided more than sufficient basis to establish a fair probability that there was contraband at the 201 Wearden address.

Clause 7(d) of the affidavit established that a controlled purchase of cocaine took place at the 201 Wearden address. [DE-2-pg. 3]. Now it is true that Clause 7(d) did not clearly state whether the purchase took place inside the residence or on the outside of the residence, but it did not need to do so to establish probable cause in this case. Even if the purchase of the narcotics took place outside of the residence there would still be sufficient grounds for District Court Judge Marr to make a reasonable inference that there was contraband inside the residence or within the curtilage given the other information in the affidavit.

The *Flores* case provides key insight on this point. In that case the State's affidavit relied on two essential points: 1) that the police had

received anonymous tips about drug activity at the Flores residence and 2) that on two occasions the police found marihuana residue in the garbage in front of the residence. *Flores,* 319 S.W. 3d at 703. This was found to be enough to support the magistrate's finding of probable cause. *Id.*

The facts of this case are similar to *Flores.* Both cases involve evidence of narcotic activity on the property but not necessarily direct evidence of narcotics in the suspect residence itself. In *Flores* the evidence was marihuana residue in the trash in front of the property while in the present case it was the sale of narcotics at that location but not inside the residence. In both circumstances it is clearly possible to envision innocent explanations for those suspect facts. In *Flores,* maybe the marihuana residue was left by a neighbor smart enough not to leave an illegal substance in his own trash, just like here maybe the drug dealers pick innocent driveways to sell their narcotics so they don't tip the police off to their main stash of drugs. But while it is possible to envision scenarios that could explain away the suspicious facts, that does not negate probable cause, and that is where the trial court made its fundamental error. The trial court's findings state that the affidavit failed to show the contraband could only have been obtained from inside the suspected place. [CR-I-27]. But there was no requirement for the affidavit to do so. The State is not required to exclude

all other possibilities to establish probable cause to search a location. And again the State does not even have to show it is more likely than not that the contraband came from inside the residence. All the State has to show is that there is a fair probability that there was contraband inside the residence. Evidence of a drug sale at that residence is strong evidence by itself to support such a conclusion.

Nor was the evidence of the drug purchase the only evidence the State presented in its affidavit to support a claim of probable cause for there being contraband at the 201 Wearden residence. Clause 7(g) of the State's affidavit likewise stated that the Victoria Police Department Special Crimes Unit had police intelligence from multiple sources that the Appellee was a drug dealer. [DE-2-pg. 4]. Clauses 7(h) likewise described an anonymous tip that the Appellee had recently possessed contraband material. *Id.* And Clauses 7(g) and 7(i) together created a logical inference that Appellee lived or at least had access to the residence at 201 Wearden. *Id.*

An anonymous tip by itself may be insufficient to establish probable cause to search. *Flores,* 319 S.W. 3d at 703. However, in conjunction with other evidence it is a factor that can be considered to determine whether there was probable cause. *Id.* Thus just as the magistrate in *Flores* was able to utilize the information from the anonymous tips in his affidavit to support

his finding of probable cause, so would District Court Judge Marr be permitted to consider that the Victoria Police Department had intelligence reports stating that the Appellee was a drug dealer.

Thus District Court Judge Marr, in evaluating the affidavit, had information that: 1) the Appellee was a drug dealer, 2) that Appellee lived at the 201 Wearden Drive residence, and 3) that the sale of narcotics took place at the 201 Wearden address. Based on those facts, it was reasonable for District Court Judge Marr to infer that there was a fair probability that there were narcotics inside the 201 Wearden residence. It is not an absolute certainty that there were narcotics in that residence, but certainly it is logical to infer that if a drug transaction takes place on the property of an individual who has been reported to be a drug dealer that said individual was most likely involved in the drug transaction. (It would be a remarkable coincidence after all for Mr. Casas to pick a driveway at random to conduct his narcotic sale in that just happened to be the driveway of a different, completely uninvolved drug dealer.) And if it was reasonable for District Court Judge Marr to infer that drug transactions involving the Appellee are taking place at 201 Wearden then it would also be reasonable for District Court Judge Marr to infer that additional narcotics could be found at that residence. Where there is smoke (in this case a drug transaction occurring at

the property of a reported drug dealer) it is reasonable to infer fire (additional drugs located inside the residence.) See *Rodriguez,* 232 S.W. 3d at 63.

Therefore it was reasonable for District Court Judge Marr to conclude that the information presented to him in the search warrant affidavit combined with the reasonable inferences that flow from those facts established probable cause that there could be contraband inside the residence at 201 Wearden Drive. The inferences he drew were not based on conclusory statements but rather on specific, true facts provided by the police (that a drug purchase took place at 201 Wearden Drive, that the Appellee lived there, and that anonymous sources had reported that the Appellee sold drugs.). Perhaps a different magistrate considering these same facts would have come to a different conclusion, but that does not justify overturning District Court Judge Marr's issuance of the search warrant. The facts that were in the affidavit, combined with the reasonable inferences District Court Judge Marr made from those facts, were sufficient to establish a fair probability that contraband would be found at the 201 Wearden Drive residence. That is all that is legally required to support the issuance of a warrant. *Id.* at 64; Tex. Crim. Proc. Code Ann. art. 18.01(b) (West).

Reviewing courts are obligated to defer to the issuing magistrate and uphold his determinations based on all reasonable and commonsense inferences and conclusions that the affidavit's facts support. *Rodriguez,* 232 S.W. 3d. at 64. Even in the marginal cases where the reviewing court itself might have ruled differently on the affidavit, it must still accept the issuing magistrate's determination. *Flores,* 319 S.W. 3d at 702. Only if the magistrate lacked a substantial basis for his determination of probable cause can that determination be overruled. *McLain,* 337 S.W. 3d at 271.

The trial court failed to provide the highly deferential standard to which District Court Judge Marr, as the issuing magistrate in this case, was entitled on his finding of probable cause. That failure to provide the appropriate deference was plain error. District Court Judge Marr was entitled to make reasonable inferences based off of the facts presented to him in the affidavit, and thus facts coupled with his inferences were sufficient to establish a substantial basis that there was probable cause to support the issuance of a search warrant. District Court Judge Marr had a substantial basis to decide there was probable cause, and thus the warrant should have been upheld as valid, and the evidence obtained pursuant to that warrant should not have been suppressed. To the extent the trial court ruled otherwise, the trial court's ruling was error and should be reversed.

## II. The trial court erred in finding a "reckless disregard for the truth" in the search warrant affidavit.

The trial court did not justify its granting of the suppression motion solely on a finding of lack of probable cause in the affidavit. Instead the trial court also concluded that there was a *Franks"* issue and found the affidavit involved a "reckless disregard for truth" due to the affidavit creating an impression that the CI had purchased cocaine from inside the residence at 201 Wearden Drive when in actuality it was a different person who purchased the cocaine inside the residence and then the CI purchased the cocaine from that person. [CR-I-27]; *Franks v. Delaware,* 98 S. Ct. 2674 (1978). The trial court's conclusion is unsupportable because there was no false statement in the affidavit in this case.

Clause 7(d) of the affidavit states, "The CI #254 responded to 201 Wearden Dr., where the controlled Purchase took place." [DE-2-pg. 3]. That statement is absolutely truthful. The CI did travel to 201 Wearden Drive and the controlled purchase took place at that address. [RR-I-10-12]. The trial court made no findings saying it did not believe the testimony at the suppression hearing concerning that the CI traveled to 201 Wearden Drive and that drugs were purchased at that location. Quite the contrary in

fact: the trial courts Suppression Order acknowledges that that is exactly what happened. [CR-I-27].

Nothing in the affidavit states that the CI ever went inside 201Wearden Drive, that the CI witnessed the drug transaction that occurred inside 201 Wearden Drive, or that the CI personally purchased drugs from the Appellee. [DE-2]. Therefore there was no false statement in the affidavit. A *Franks* violation requires showing that either a false statement intentionally and knowingly or with a reckless disregard for the truth was included by the affiant in the warrant affidavit. *Franks,* 98 S. Ct. at 2675. As such the challenged statement must be false to constitute a *Franks* violation. Here there simply was no false statement, and as such there can be no *Franks* violation.

Notably the trial court's own findings of fact do not allege any statement in the affidavit that was actually false. [CR-I-27]. Instead the trial court attempts to create a false statement by claiming the affadvit "creates an inference that CI #254 went inside the residence at 201 Wearden and purchased the cocaine." *Id.* This claim of false statement by inference is flawed both as a factual matter and as a matter of law.

As a question of fact the trial court's inference regarding the affidavit is to be reviewed *de novo*. A trial court in a *Franks* hearing is

entitled to almost total deference on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State,* 68 S.W.3d 644, 652 (Tex. Crim. App. 2002). However, application of law to fact questions that do not turn on credibility and demeanor are instead reviewed *de novo. Id.* at 653. The question of what kind of inference can reasonably be drawn from the undisputed statements of fact in the affidavit is not a question that depends on credibility or demeanor. Thus it is to be reviewed *de novo,* and under such an interpretation it is clear the trial court's interpretation of the affidavit as creating an inference that the CI purchased the drugs himself inside the residence at 201 Wearden is simply not a plausible interpretation of the facts in the affidavit.

The affidavit specifically states in Clause 7(d) that "Throughout the duration of the controlled purchase the CI #254 was monitored physically and through the body wire." [DE-2-pg. 3]. (emphasis added.) The note that the CI was monitored physically logically makes it impossible to credibly believe that he was inside the residence when the purchase took place. The investigating officers would have had to be able to see through the residence walls or have accompanied CI #254 inside the residence to have physically monitored him inside the residence. Thus obviously by the plain language

of the affidavit, the CI was not inside the building when the controlled purchase took place, but was rather in or near his vehicle, where he was able to be physically monitored by the investigating officer.

It should also be noted that Clause 7(d) also specifically comments on how the CI's vehicle "was parked in the driveway of 201 Wearden for several minutes." [DE-2-pg. 3]. There is no logical reason to include this fact if the purchase did not actually take place in or near that automobile. The location of the vehicle would be irrelevant if the police were describing a purchase that took place inside a building. The automobile's exact location is only important if it was involved in the purchase of the narcotics. Therefore the logical interpretation of the affidavit is that the purchase of narcotics occurred in or near that automobile, while it was sitting in the driveway at 201 Wearden Drive, which is exactly what the testimony at the suppression hearing shows is what happened since that was the location where Mr. Casas sold (actual transfer) the cocaine he had acquired (constructive transfer) to the CI. [RR-I-10-11].

For the trial court to divine a false inference from the affidavit as written thus required the trial court to twist the affidavit until it was nearly unrecognizable, while ignoring the clear statements in Clause 7(d) that make it obvious that the CI was not inside the residence during the purchase of the

narcotics. Affidavits are supposed to be interpreted in a realistic, commonsensical manner. *McLain,* 337 S.W. 3d at 271. The trial court failed to do that. Instead the trial court interpreted the affidavit in exactly the sort of hyper-technical, unrealistic manner that both the United States Supreme Court and the Court of Criminal Appeals have warned courts against doing. *Illinois v. Gates,* 103 S. Ct. 2317, 2359 (1983); *McLain,* 337 S.W. 3d at 271. The trial court's hyper-technical interpretation, which ignores key facts in the affidavit to reach its conclusion, is without merit and should be rejected in favor of the common sense interpretation that the affidavit never claimed the CI was inside the residence during the purchase. And as such there was even by omission, no basis for finding a *Franks* violation.

In the alternative though, it is not even necessary to consider whether or not the trial court was wrong as a matter of fact in deciding that the affidavit created a false inference, because as a matter of law the trial court should never have considered whether or not the affidavit created any inferences.

The trial court was unable to cite any case law in its findings, supporting its contention that a *Franks* violation can be found due to the

omission of facts from an affidavit. [CR-I-27]. This is because no such law exists.

In fact the Court of Criminal Appeals has made it very clear that courts should not be considering whether facts were left out of an affidavit. Rather the Court of Criminal Appeals wants the review of search warrant affidavits to turn on what facts are in the affidavit. See *Rodriguez,* 232 S.W. 3d at 64. Indeed the Court of Criminal Appeals specifically cautioned that, "it is not necessary to delve into all of the facts that were omitted by the affiant, facts that could have been included in the affidavit, or contrary inferences that could have been made by the magistrate." *Id.* The Court of Criminal Appeals then concluded that "the <u>only</u> issue is whether <u>the facts that actually were</u> in the affidavit, combined with all reasonable inferences that might flow from <u>those facts</u>" establish probable cause. *Id.* (emphasis added.)

As such it is clear the Court of Criminal Appeals does not want magistrates and reviewing courts considering what additional facts could have been placed in an affidavit. Rather the affidavit must stand or fall based on what is in the affidavit (and the reasonable inferences that can be drawn from those facts.) By finding a "reckless disregard for the truth" not based on what was in the affidavit but rather based on what was missing

from the affidavit, the trial court acted improperly. The trial court went beyond the scope of authority and by doing so was disregarding the Court of Criminal Appeals's guidance from *Rodriguez.* This was improper and should not stand.

Any *Franks* hearing about the truthfulness of an affidavit should be based solely on the truthfulness of the statements in the affidavit itself, and thus as a matter of law it was error for the trial court to find a *Franks* violation based on information not being included in the affidavit.

Further, the trial court's finding of falsity relies upon: 1) twisting the plain meaning of the affiant officer's words, 2) requiring the exclusion of alternative explanation, and 3) increasing the burden beyond sufficient facts to conclude only probable cause by defining veracity as including all known or knowable information. This trial court's finding also suggest that only direct transfers corroborated (Tex. Crim. Proc. Code art. 38.141 (West)) by direct observation constitutes delivery and that anything different requires explanation.

As to corroboration, "A defendant may not be convicted," clearly refers to an adjudicative burden of proof. Tex. Crim. Proc. Code art. 38.141 (West). The statute more broadly defines delivery: "'Deliver' means to <u>transfer, actually or constructively</u>, to another a controlled substance …

regardless of whether there is an agency relationship. The term <u>includes</u> <u>offering to sell</u> a controlled substance." Tex. Health & Safety Code Ann. § 481.002(8) (West). The suspected criminal activity is Delivery of a Controlled Substance, Penalty Group 1. Further, the offense of delivery involves "a person commits an offense if the person knowingly manufactures, <u>delivers</u>, or <u>possesses with intent to deliver</u> a controlled substance." Tex. Health & Safety Code § 481.112 (West).

The trial court's finding of insufficiency ignores statutory definitions and requirements, as well as court precedence of the same, while it contemptuously treats the issuing magistrate findings. In support of that finding, the trial court found falsity by omission when viewing the affidavit only after twisting the language used, ignoring again the law applicable and through tortured logic. This finding of falsity is nothing more than imagined.

## III. Even if there was a *Franks* violation, the trial court still erred by suppressing the evidence in this case.

In the alternative again, even if we assume that a *Franks* violation can be created by evidence being left out of an affidavit, and even if we assume on the specific facts of this case, the omitted material created a false inference that the CI personally purchased the narcotics from inside the residence at 201 Wearden Drive, the trial court still erred by setting the

remedy for that supposed violation as being the suppression of the evidence obtained by the search warrant.

The mere finding of a *Franks* violation does not by itself automatically require suppression of the evidence in the accompanying warrant. Rather the remedy for a *Franks* violation is simply to have the false material excised from the warrant. See *Harris v. State,* 227 S.W. 3d 83, 85 (Tex. Crim. App. 2007).

In the present case by the trial court's own findings the only false information in the warrant would be the "inference that CI#254 went inside the residence at 201 Wearden and purchased the cocaine." The remainder of the affidavit would still be perfectly valid since the trial court found no other portion of it to be untruthful.

As such even on an adverse *Franks* finding the only thing the State would lose would be an inference created by the trial court itself. An inference it must be remembered that the State itself has never asserted in this case, and an inference that the State is not relying upon to support its claim of probable cause.

As was discussed in Section I of the Argument section of this brief, the State does not need the CI to have purchased the cocaine from inside the residence to establish probable cause to search the residence. The fact that

the CI purchased cocaine in the driveway at 201 Wearden (asserted in the affidavit and not disputed by the trial court), coupled with the fact that the Appellee lives or at least has access to 201 Wearden (asserted in the affidavit and not disputed by the trial court), couple with the fact that the police have had multiple intelligence reports that the Appellee was dealing drugs (asserted in the affidavit and not disputed by the trial court) is enough for the magistrate to have found probable cause even without the trial court's special inference. [DE-2-pgs. 3-4; CR-I-27]. Thus even if the trial court's inference is removed from the warrant, the remaining material in the affidavit still establishes probable cause. Accordingly, there was no legal justification for the trial court to invalidate the entire warrant and suppress the evidence obtained by the warrant, and to the extent the trial court's ruling did so, that ruling should be reversed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that this Honorable Court reverse the judgment of the trial court.

.

**Respectfully submitted,**

**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

**ATTORNEYS FOR THE APPELLANT,**
**THE STATE OF TEXAS**

# CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellant's Brief submitted on January 2, 2015, excluding those matters listed in Rule 9.4(i)(3) is 5,624.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
Telephone: (361) 575-0468
Facsimile: (361) 576-4139

# CERTIFICATE OF SERVICE

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on Brent Dornburg, Attorney for the Appellee, by depositing same in the United States Mail, postage prepaid on the day of January 2, 2015.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
Telephone:  (361) 575-0468
Facsimile: (361) 576-4139