

NUMBER 13-14-00588-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                              Appellant,

v.

CHRISTOPHER ALEXSON
PAPPILLION,                                                                       Appellee.

## On appeal from the 24th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

Appellee, Christopher Alexon Pappillion, was charged with several drug-related

offenses[1] and filed a motion to suppress evidence. The trial court granted the motion and

---

[1] Specifically, Pappillion was charged by indictment with: (1) possessing with intent to deliver more than four but less than 200 grams of cocaine, a first-degree felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West, Westlaw through Ch. 46, 2015 R.S.); (2) possessing with intent to deliver more than 80 but less than 4,000 abuse units of lysergic acid diethylamide (LSD), a first-degree felony, *see id.*

the State of Texas now appeals, arguing by three issues that: (1) the trial court erred in determining that there was no probable cause to search Pappillion's residence; (2) the trial court erred in finding that there was a "reckless disregard for truth" in the search warrant affidavit; and (3) suppression of evidence was not the appropriate remedy for a *Franks* violation. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). We reverse and remand.

## I. BACKGROUND

On January 16, 2014, Victoria Police Department officers executed a search warrant at Pappillion's residence. The warrant was issued by a district judge two days prior based on a sworn affidavit by Detective Dennis Paine. The affidavit stated in relevant part as follows:

    a. Within the past 72 hours (2014.01.13.2146 y.m.d.t) the Victoria Police Department Special Crimes Unit (SCU) conducted a controlled purchase of cocaine through the use of a Confidential Informant (CI #254). **The information provided by the confidential informant has proven to be reliable and credible** and has been verified by officer observation and monitored recordings.

    b. The identity of the CI #254 will not be placed in this affidavit for the safety and security of the CI.

    c. The CI #254 met with VPD Detectives at a designated staging area prior to the Controlled Purchase. The CI #254 and the CI's vehicle were searched by this affiant and Detective McDonald, and no contraband was located. The CI #254 was fitted with a body wire to provide audio surveillance of the controlled purchase.

---

§ 481.1121(b)(3) (West, Westlaw through Ch. 46, 2015 R.S.); (3) possessing with intent to deliver more than 400 grams of "a synthetic chemical compound that is a cannabinoid receptor agonist that mimics the pharmacological effect of naturally occurring cannibinoids," a first-degree felony with a minimum sentence of ten years' imprisonment, *see id.* § 481.113(e) (West, Westlaw through Ch. 46, 2015 R.S.); (4) possessing more than four ounces but less than five pounds of marihuana, a state-jail felony, *see id.* § 481.121(b)(3) (West, Westlaw through Ch. 46, 2015 R.S.); (5) possessing with intent to deliver more than 28 grams but less than 200 grams of an "anabolic steroid or a substance that is chemically or pharmacologically related to testosterone and that promotes muscle growth," a second-degree felony, *see id.* § 481.114(c) (West, Westlaw through Ch. 46, 2015 R.S.); and (6) tampering with physical evidence, a third-degree felony, *see* TEX. PENAL CODE ANN. § 37.09(d)(1) (West, Westlaw through Ch. 46, 2015 R.S.).

d. The CI #254 was issued $300.00 of US Currency from the VPD Narcotics fund to purchase $300.00 of cocaine. The CI #254 responded to 201 Wearden Dr., where the controlled Purchase took place. Throughout the duration of the controlled purchase the CI #254 was monitored physically and through the body wire. The CI's vehicle was parked in the driveway of 201 Wearden for several minutes. After the cocaine was purchased from the location, the CI's vehicle left the location and was followed by SCU Detectives.

e. The CI #254 then met with this affiant and the other VPD SCU Detectives at a designated staging area. The cocaine that was purchased was collected by Detective McDonald. This affiant observed the substance to be a white hard chunk in a clear plastic sandwich bag. I recognized this substance to be cocaine from many previous narcotics arrests/investigations.

f. The substance was field tested by Sgt Fetters with a Nartec brand cocaine field tester which turned blue, indicating a positive result for the presence of cocaine. The substance was secured and transported to the VPD where it was weighed (13.26 net grams), and tagged in as evidence and secured in an evidence locker.

g. Through previous investigations this affiant knows that 201 Wearden Dr. is the residence of Christopher Pappillion W/M 03/01/80. The VPD SCU has police intelligence from multiple sources that Pappillion is a drug dealer. The VPD SCU performed some additional surveillance at the location and no further action was taken at that time.

h. An anonymous source within the past few months informed the VPD SCU with information provided alleged [sic] that Pappillion had a large safe in his bedroom that is full of Steroids, and other contraband.

. . . .

m. Based upon the above facts, through the perspective of this affiant's training and experience, this affiant has reason to believe and this affiant does believe that illegal narcotics are inside the residence in violation of the Texas Health and Safety Code.

(Emphasis in original.) In executing the warrant, police discovered various illegal drugs including cocaine, LSD, marihuana, synthetic marihuana, and steroids.

Pappillion was charged and moved to suppress the drug evidence, alleging that the actions of the Victoria Police Department violated his constitutional and statutory

rights.  The motion specifically alleged that the affidavit upon which the search warrant was based was "improperly and illegally executed" because, among other things, the affidavit "does not reflect probable cause to justify the issuance of a search warrant" and contained information "that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth."

At a suppression hearing, Paine testified that he is familiar with the facts contained in his affidavit.  The following colloquy occurred:

> Q. [Defense counsel] And in that affidavit you make the claim that C.I. 254 made a controlled purchase, correct?
>
> A. [Paine]  Yes, sir.
>
> Q.  What is a controlled purchase?
>
> A.  It was a controlled purchase of a controlled substance or any narcotic under the supervision of the special crimes unit with the organization of a C.I. or an undercover [o]fficer . . . .
>
> Q.  And in that affidavit he made a controlled buy, correct?
>
> A.  Yes, sir.
>
> Q.  And in reality he didn't make a controlled buy did he?
>
> A.  In actuality, no, he didn't actually purchase the substance.  It was a third-party that went into the location and purchased it.
>
> Q.  And so just in summary of what happened you—and if I say anything incorrect, please let me know.  Y'all searched the C.I., wired him, correct, so you can hear his conversation—
>
> A.  Yes.
>
> Q.  —and record it? . . . .  There was a known party Nathan that he was going to purchase cocaine from, correct?
>
> A.  Yes, sir.

4

Q.        And he contacted Nathan and Nathan didn't have any cocaine, did he?

A.        That's correct.

Q.        So they picked up Nathan's car and picked up one of Nathan's friends, correct?

A.        They remained in the C.I.'s vehicle and then picked up one of Nathan's friends, yes, sir.

Q.        So they went and picked up Ivan Casas, correct?

A.        Yes, sir.

Q.        He was supposed to get Nathan some cocaine, correct?

A.        Correct.

Q.        He didn't have any?

A.        That's correct.

Q.        So he called his friend Jose Partida (phonetic), correct?

A.        No.  Jose was the second subject.  Ivan was the last person they contacted, I'm sorry.

Q.        Okay.  Who was the fourth person—the third person he picked up?

A.        Ivan.

Q.        Ivan?

A.        Yes.

Q.        C.I. picked up Nathan first or Ivan first?

A.        Nathan.

Q.        They picked up Nathan?

A.        Correct.

Q.        And they picked up Ivan?

A.        Jose.

5

Q.      And then they picked up Jose second?

A.      Yes, sir.

Q.      And Jose didn't have any cocaine, correct?

A.      That's correct.

Q.      So then he calls his supplier Ivan, right?

A.      Yes.

Q.      And they pick up Ivan and Ivan doesn't have any cocaine, correct?

A.      That's correct.

Q.      And Ivan texted to 201 Wearden?

A.      Yes, sir.

Q.      And leaves the vehicle and comes back with the cocaine, correct?

A.      That's correct.

Q.      You ever dealt with Ivan before?

A.      No, sir.

Q.      Know anything about his truthfulness or veracity?

A.      No, sir.

Q.      Is he trustworthy?

A.      No, sir.

Q.      And the confidential informant didn't witness the transaction, correct?

A.      I couldn't hear you.

Q.      The Confidential Informant No. 254 he didn't witness that transaction at 201 Wearden did he?

A.      No, sir, he did not go inside the residence.

Q.      And you didn't put that in the affidavit did you?

6

A.          I don't believe so, sir.

Q.          So basically the C.I. purchased cocaine from Ivan, correct? You gave him money and got cocaine in receipt?

A.          Yes.

Q.          And you don't know who Ivan dealt with inside the house?

A.          He said it was a friend, a roommate of Mr. Pappillion.

Q.          Who said that?

A.          Ivan.

Q.          And when did you talk to Ivan that night?

A.          I didn't talk to him, sir, it was on the wire.

Q.          I'm sorry.

A.          It was on the wire. You could hear the conversation.

Q.          And you recently provided that wire to the D.A.'s office?

A.          Yes, sir.

Q.          But not with the initial case, right?

A.          No, sir.

Q.          And this offense report you used to review for this undercover buy—you didn't initially provide that to the D.A.'s office did you?

A.          No, sir.

On cross-examination by the State, Paine testified that he did not put the names of Ivan, Nathan or Jose in the affidavit in order "[t]o protect the informant's identity." He testified that he was not trying to deceive the magistrate by leaving out the information that Ivan Casas, rather than the confidential informant, was the one who went into the location to buy the cocaine.

7

The trial court granted the motion to suppress. In its order, it stated that the information in the affidavit "is conclusory and lacks sufficient underlying facts to establish probable cause to issue a search warrant." The order further stated as follows:

> Concerning the actual purchase of cocaine at 201 Wearden Dr., the affidavit in this case only indicates that the CI "responded to 201 Wearden Dr., where the controlled purchase took place", "[t]he CI's vehicle was parked in the driveway of 201 Wearden for several minutes", and "[a]fter the cocaine was purchased from the location, the CI's vehicle left the location . . ." There is not any indication in the affidavit whether the contraband could only have been obtained from inside the suspected place.
>
> This case is distinguishable from Athey v. State, [No. 13-06-129-CR, 2007 WL 2389599, at *1 (Tex. App.—Corpus Christi Aug. 23, 2007, no pet.) (mem. op., not designated for publication)], the affiant in Athey indicating in the affidavit that he observed the informant "go directly into the suspected place" and setting forth in the affidavit that the contraband could have only been obtained from inside the suspected place.
>
> The testimony at the hearing also points out a "reckless disregard for the truth" Franks hearing issue. The statements in the affidavit create an inference that CI#254 went inside the residence at 201 Wearden and purchased the cocaine. The testimony at the hearing indicates that it was [a] person other than the CI that went inside the location and the CI then purchased the cocaine from this person, the CI not being a witness to any transaction occurring inside the location.

This appeal followed. See TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through Ch. 46, 2015 R.S.).

## II. DISCUSSION

### A. Standard of Review and Applicable Law

"The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (footnote omitted). "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a

8

crime will be found at the specified location." *Id.* Probable cause is a "flexible and nondemanding" standard, but "probability cannot be based on mere conclusory statements of an affiant's belief." *Id.* at 60–61. Instead, the affiant must present an affidavit that "allows the magistrate to independently determine probable cause" and "the magistrate's action[s] cannot be a mere ratification of the bare conclusions of others." *Id.* (internal quotations omitted). Moreover, the facts stated in a search affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

We do not analyze the affidavit in a hyper-technical manner; rather, we interpret it in a common-sensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Rodriguez*, 232 S.W.3d at 61. When in doubt, we defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 272; *Rodriguez*, 232 S.W.3d at 61.

Ordinarily, we review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law. *McLain*, 337 S.W.3d at 271. However, when the trial court is determining whether probable cause exists to support the issuance of a search warrant, it makes no credibility determinations because the court is constrained to the four corners of the affidavit. *Id.* Accordingly, when we review a magistrate's decision to issue a warrant, we apply a "highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id.* "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination." *Id.*

9

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56. Under *Franks*, the false statement in the affidavit must have been either intentional or made with reckless disregard for the truth, and must have been necessary to the finding of probable cause, in order to render the warrant invalid. *Dancy v. State*, 728 S.W.2d 772, 782 (Tex. Crim. App. 1987) (citing *Franks*, 438 U.S. at 155–56). A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it. *Id.* at 783 (citing *Franks*, 438 U.S. at 171).

## B.  Analysis

We find that Pappillion established by a preponderance of the evidence at the suppression hearing that Paine's affidavit contained a false statement and that Paine made the false statement with at least a reckless disregard for the truth. *See Franks*, 438 U.S. at 155–56. The affidavit stated in part that police "conducted a controlled purchase of cocaine through the use of a Confidential Informant" and that "[t]he CI #254 responded to 201 Wearden Dr., where the controlled Purchase took place." This was contradicted by Paine's testimony at the suppression hearing that the confidential informant "didn't actually purchase the substance," "did not go inside the residence," and did not witness the transaction at the residence.

The State urges us to conclude that there were no false statements in the affidavit.

10

The State notes that the affidavit merely stated (1) that the confidential informant "responded to 201 Wearden Dr.," (2) that the controlled purchase "took place" at that location, and (3) that the confidential informant's vehicle "left the location" after "the cocaine was purchased from the location." The State argues that these statements, taken individually, are true. That may be so. But, when taken together, the statements in Paine's affidavit—including the statement that police "conducted a controlled purchase of cocaine through the use of a Confidential Informant"—unmistakably implied that the confidential informant was the one who made the controlled purchase from Pappillion's residence. That implication was not true, according to Paine's suppression hearing testimony. Instead, Ivan Casas made the purchase.

The State points out that, according to the affidavit, the confidential informant was "monitored physically" by police and therefore could not logically have been inside the residence at any point. The State also notes that the affidavit stated that the confidential informant's vehicle was parked in the driveway of the residence for several minutes, and it argues that there would be "no logical reason" for the affidavit to have mentioned that fact "if the purchase did not actually take place in or near that automobile." We disagree. Interpreting the affidavit in this manner would be to adopt the "hyper-technical" approach disfavored by law. *See Rodriguez*, 232 S.W.3d at 61. Instead, construing the affidavit in a "common-sensical and realistic manner," we find that it contained false statements made with at least reckless disregard for the truth. We therefore overrule the State's second issue.

Nevertheless, a *Franks* violation is fatal to the warrant only if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 155–56. Here, even setting aside the statements

implying that the confidential informant was the one that purchased cocaine from Pappillion's residence, there was still a "substantial basis" upon which the magistrate could have found probable cause. In particular, it is undisputed that—as the affidavit stated—cocaine was indeed purchased from Pappillion's residence. The fact that it was someone other than the confidential informant that actually made the purchase does not rob this fact of its probative force.[2]

The affidavit additionally stated that, according to "multiple sources," Pappillion is a drug dealer. These "multiple sources" were purely anonymous, and there was no indication that their reports were credible. But, while an anonymous tip alone is generally insufficient to support a warrant, it is "nevertheless a circumstance to be considered, along with all of the other circumstances, in the determination of whether probable cause existed." *Flores v. State*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). Here, the anonymous reports that Pappillion was a drug dealer were accompanied by the fact that a drug transaction took place at Pappillion's residence. These facts, when taken together, established probable cause to search.

The trial court noted in its order that there was no "indication in the affidavit whether the contraband could only have been obtained from inside the suspected place." The affidavit did not explicitly state that the contraband could *only* have been obtained from inside Pappillion's house, but it did explicitly state that cocaine was purchased from that

---

[2] The affidavit emphasized that "[t]he information provided by the confidential informant has proven to be reliable and credible and has been verified by officer observation and monitored recordings"; whereas Paine conceded that he has never dealt with Casas before and knew nothing about his truthfulness or veracity. Paine then testified at the suppression hearing that Casas is not trustworthy.

But, according to the affidavit, cocaine was purchased from Pappillion's residence, and Paine's testimony did not contradict that fact. Therefore, Casas's trustworthiness was irrelevant to the determination of probable cause.

location. In any event, in order to establish probable cause, the affidavit only needed to establish a "fair probability"—not a certainty—that contraband would be found at the residence. *See Rodriguez*, 232 S.W.3d at 60.

Applying the "highly deferential" standard applicable to the issuance of warrants, we find that the affidavit, excluding all false and misleading statements, provided a "substantial basis" upon which the magistrate could have independently determined that there was a "'fair probability' that contraband or evidence of a crime will be found at the specified location." *See id.* Accordingly, the affidavit established probable cause, and the trial court erred in granting the motion to suppress. The State's first and third issues are sustained.

## III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.